**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CONSTANCE MOGULL, individually and on behalf of all others similarly situated,<br><br>                     Plaintiff,<br><br>v.<br><br>PETE AND GERRY'S ORGANICS, LLC,<br><br>                   Defendant. | **CASE NO.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Constance Mogull ("Plaintiff" or "Ms. Mogull"), by and through her attorneys, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge, against Defendant Pete and Gerry's Organics, LLC ("Nellie's" or "Defendant").

## NATURE OF THE ACTION

1.     This is a class action lawsuit on behalf of purchasers of Nellie's Free Range Eggs (the "Eggs") in the United States.

2.     Defendant, the distributor of the Eggs, falsely markets them as being "Free Range" eggs from hens raised in humane living conditions.

3.     In fact, while boasting about the living conditions of Nellies' hens, Defendant goes as far as to draw a contrast between its farms with other farms with purportedly less humane conditions:

> Most hens don't have it as good as Nellie's.  9 out of 10 hens in the U.S. are kept in tiny cages at giant egg factories housing millions of birds. Sadly, even "cage-free" is now being used to describe hens that are crowded into large, stacked cages on factory farms, who never see the sun.  Nellie's small family farms are all

Certified Human Free-Range.  Our hens can peck, perch, and play on plenty of green grass.









4.      This statement and this imagery are reinforced by Defendants' further statements that the Eggs come from "Outdoor Forage" hens.

5.      These representations led Plaintiff and other reasonable consumers to understand that Defendant's hens had space to move around both indoors and outdoors, that the hens in fact spent time outdoors, and that Defendant's hens have better lives than other hens because they have more access to the outdoors.

6.      Unfortunately for consumers, none of this is accurate.  Defendant's portrait of a its hens' Free Range" lifestyle is far from the reality.  Defendant's hens are crammed into sheds up to 20,000 at a time, preventing them from extending their wings, foraging or making their way to the outdoor space Defendant advertises so prominently.



7.      These conditions are a very far cry from the impression reasonable consumers gain from Defendant's representations and photographs on the Eggs' packaging.

8.      Media on Defendant's own website provides powerful evidence of how consumers interpret its claim that the Eggs are "free range."  In a video found on the Nellie's YouTube Channel titled "Nellie's Free Range Eggs – Understanding Eggs," Nellie's purports to provide a "Helpful explanation of some of the terms used on egg cartons and their validity from Nellie's Free Range Eggs."[1]

9.      The video discusses the difference between specialized egg labels: "all natural farm fresh," "cage free," and "free range."[2]  The narrator describes a "cage free" hen as "still liv[ing] inside a space much like a large overcrowded warehouse"—deeming it "still a pretty grim existence" because "she'll never get to see the outdoors or have the environment she needs to act like a normal hen." For comparison, the video includes an image of a cage free farm:[3]

---

[1] https://www.youtube.com/watch?v=b62wACS0ln0 (last visited March 23, 2021)

[2] *Id*.

[3] *Id.*



In contrast, the video argues, the "hen that made [a Nellie's egg]?  Well, she's one happpy hen.  Our free-range hens get to live their lives like real hens, with access to pasture everyday in good weather.  Our hens can spread their wings, forage in the fields, or scratch in the dirt."[4]  This narration is accompanied with a series of images purportedly depicting Nellie's farms:

---

[4] *Id.*

5



Nellie's Free Range Eggs - Understanding Eggs

13,903 views • Aug 31, 2016

LIKE     DISLIKE     SHARE     SAVE     ...



Nellie's Free Range Eggs - Understanding Eggs

13,903 views • Aug 31, 2016

LIKE     DISLIKE     SHARE     SAVE     ...



Notably, the interior of a Nellie's henhouse is never shown in the video.  The video ends with a comparison of "all natural," "cage free" and Nellie's Free Range Eggs, and shows that only Nellie's eggs come from "small farms" where the birds are given "room to stretch" and "outdoor access."[5]

  10. Defendant's practices clearly do not live up to its own interpretation of the term "Free Range" and the Eggs' packaging images:

---

[5] *Id.*

**What Nellie's advertises to be**

  

**What Nellie's claims it is not**      **Nellie's actual supplier**

 



11.     As shown in the above image comparisons, the conditions in Defendant's henhouses are virtually indistinguishable as those from the example they show as being not "Free Range" where hens are essentially "liv[ing] inside a space much like a large overcrowded warehouse." Nellie's itself describes this as a "grim existence" for these hens. But contrary to its packaging representations, that is precisely how Nellie's own hens live.

12.     Further exacerbating the issue, Defendant's hens can only get outside through small hatches cut at intervals along the sides of the shed. The hatches are closed all winter and

during inclement weather.  In pleasant weather the hatches are closed at night and are not opened

until 1 pm the next day.









13.   Because of this overcrowding and limited time that the hatches are open, many of Defendant's hens are unable to ever access the hatches or the outdoor space Defendant advertises so prominently.

//

//

//

//

//

//

//

//

//

//

//

//

14.    A 2016 consumer survey conducted at the University of Bath found that the top

reason consumers purchase eggs labeled as "free range" is because "Hens are happier."[6]

**Figure 1:** The reasons selected by consumer respondents for buying free-range eggs. Multiple options could be selected.



15.    But Nellie's hens are not happier.  They live under conditions comparable to those

that Defendant itself has labeled as a "grim existence."

16.    The disconnect between Nellie's representations about the Eggs and reality is

demonstrated by a video where shoppers exiting a Brooklyn, New York Whole Foods

supermarket were asked if they had purchased Nellie's Eggs.  Shoppers who answered in the

affirmative were asked why they chose Nellie's, and their answers included "I do look for 'free

---

[6] https://purehost.bath.ac.uk/ws/files/158352483/Accepted_Version.pdf (last visited March 23, 2021)

range.'  I just feel like it's less cruel[,]" and "'Free range' because I care about the animals and how they are treated."[7]



Shoppers React to Nellie's "Free Range" Eggs
9,759 views • Oct 30, 2018

---

[7] https://www.youtube.com/watch?v=x9GksLy2R3A (last visited March 23, 2021)



Shoppers React to Nellie's "Free Range" Eggs

9,759 views • Oct 30, 2018                    👍 324   👎 35      ↗ SHARE   ☰+ SAVE   •••

    17.    The same Nellie's Eggs purchasers were then shown video of the actual conditions on Nellie's farms, and asked for their thoughts.  Their responses included "Well I think it's really deceptive.  That's disgusting what you showed me[,]" "Another big lie[,]" "It's definitely less 'free range' than you think[,]" and "It's awful.  That is not what I imagined 'free range' to be." [8]

---

[8] *Id.*



Shoppers React to Nellie's "Free Range" Eggs

9,759 views • Oct 30, 2018

324   35   SHARE   SAVE



Shoppers React to Nellie's "Free Range" Eggs

9,759 views • Oct 30, 2018

324   35   SHARE   SAVE



Shoppers React to Nellie's "Free Range" Eggs

9,759 views • Oct 30, 2018

👍 324     👎 35     ↗ SHARE     ≡₊ SAVE     •••

18.     When asked the question "After seeing this, would you buy Nellie's again?" all of the customers in the video answered that they would not.[9]

//

//

//

//

//

//

//

//

---

[9] *Id.*

19.     Consumers like Plaintiff pay more for Nellie's Eggs than eggs that do not purport
to be Free Range and bear images invoking extension outdoor space:

| Egg Brand[10] | Carton | Claims | Price[11] |
|---|---|---|---|
| Nellie's Free-Range Grade A Large Brown Eggs – 12ct |  | *See supra* | $4.79 |
| Grade A large eggs – 12ct – Good & Gather |  | "Large Fresh Grade A Eggs" | $2.29 |
| Cage-Free Grade A Large Brown Eggs – 12ct – Good & Gather |  | "Cage free" "contains 250mg Omega-3 Fatty Acid & 300ug Lutein Per Egg" | $2.59 |
| Eggland's Best Grade A Large Eggs – 12ct |  | "Now! For Your Nutritious Diet" "Excellent source of… Vitamins D, E, B2, B12, B5" "Plus- 125mg Omega 3, 25% less Saturated Fat than Regular Eggs" "Most Trusted By Shoppers" | $2.79 |
| Organic Cage-Free Fresh Grade A large Brown Eggs – 12 ct – Good & Gather |  | "Organic" "Cage free" | $3.39 |

---

[10] For the purpose of equal comparison, all eggs selected are "Grade A" and size "large"

[11] Prices from target.com using zip code 10106 on 4/9/2021

20.     Plaintiff is a purchaser of Nellie's Eggs who asserts claims for fraud, breach of express warranty, and violations the consumer protection laws of the state of New York, on behalf of herself and all similarly situated purchasers of the Eggs.

## PARTIES

21.     Plaintiff Constance Mogull is a resident of Mamaroneck, New York.  Ms. Mogull purchased the Eggs on many occasions throughout 2018 and 2019 from Stop and Shop in Larchmont, NY.  Prior to purchasing the Eggs, Plaintiff carefully viewed and read the Eggs' labeling, including the representations that the Eggs are "Free Range," that "Most hens don't have it as good as Nellie's…. Our hens can peck, perch, and play on plenty of green grass[,]" and that the Eggs are from "Outdoor Forage, 100% Vegetarian Feed" hens, and the accompanying photographs and imagery.  Plaintiff understood these statements and the photographs on the packaging to mean that Defendant's hens had space to move around both indoors and outdoors, that the hens in fact spent time outdoors, and that Defendant's hens have better lives than other hens because they have more access to the outdoors.

22.     Defendant Pete and Gerry's Organics, LLC is a New Hampshire corporation headquartered in Monroe, New Hampshire. Pete and Gerry's is one of the nation's largest sellers of eggs, with $177 million in reported sales revenue in 2017.

23.     Defendants sell Nellie's eggs in more than 9,600 retailers across the country. As of 2017, Nellie's represented that it produces its eggs through a network of "family" farms located in 12 states, including New York, Pennsylvania, New Jersey, and Vermont.

**JURISDICTION AND VENUE**

24.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

25.     This Court has personal jurisdiction over Defendant because Defendant conducts business in New York.  Defendant has marketed, promoted, distributed, and sold the Eggs in New York, rendering exercise of jurisdiction by New York courts permissible.

26.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because this is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

27.     All conditions precedent necessary for filing this Complaint have been satisfied and/or such conditions have been waived by the conduct of the Defendant.

**CLASS REPRESENTATION ALLEGATIONS**

28.     Plaintiff seeks to represent a class defined as all persons in the United States who purchased the Eggs (the "Class").  Excluded from the Class are persons who made such purchase for purpose of resale.

29.     Plaintiff also seeks to represent a subclass defined as all Class members who purchased the Eggs in New York (the "New York Subclass").

30.     Members of the Class and New York Subclass are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class and New York Subclass number in the millions.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class

members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

31.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to whether Defendant's labeling, marketing and promotion of the Devices is false and misleading.

32.     The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff was exposed to Defendant's false and misleading marketing and promotional materials and representations, purchased the Eggs, and suffered a loss as a result of that purchase.

33.     Plaintiff is an adequate representative of the Class and New York Subclass because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

34.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of

Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

<u>**COUNT I**</u>

**Deceptive Acts Or Practices, New York Gen. Bus. Law § 349**

35.      Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

36.      Plaintiff brings this claim individually and on behalf of members of the New York Subclass against Defendant.

37.      By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by making false representations on the label of the Eggs.

38.      The foregoing deceptive acts and practices were directed at consumers.

39.      The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the production and quality of the Eggs.

40.      Plaintiff and members of the New York Subclass were injured as a result because (a) they would not have purchased the Eggs if they had known that the Nellie's representations with regard to their hens and Egg production were false, and (b) they overpaid for the Eggs on account of Nellie's representations.

41.      On behalf of herself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, reasonable attorneys' fees and costs, and an order enjoining Defendant's deceptive conduct, and any other just and proper relief available under Section 349 of the New York General Business Law.

## <u>COUNT II</u>

### False Advertising, New York Gen. Bus. Law § 350

42.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

43.     Plaintiff brings this claim individually and on behalf of members of the New York Subclass against Defendant.

44.     Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York General Business Law by misrepresenting that the Eggs are "Free Range," that "Most hens don't have it as good as Nellie's…. Our hens can peck, perch, and play on plenty of green grass[,]" and that the Eggs come from "Outdoor Forage, 100% Vegetarian Feed" hens.  The packaging similarly contained misleading images of hens living outdoors, as alleged above.

45.     Plaintiff understood these statements and the photographs on the packaging to mean that Defendant's hens had space to move around both indoors and outdoors, that the hens in fact spent time outdoors, and that Defendant's hens have better lives than other hens because they have more access to the outdoors.

46.     The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

47.     This misrepresentation has resulted in consumer injury or harm to the public interest.

48.     As a result of this misrepresentation, Plaintiff and members of the New York Subclass have suffered economic injury because (a) they would not have purchased the Eggs if they had known that the Nellie's representations with regard to their hens and Egg production were false, and (b) they overpaid for the Eggs on account of the misrepresentation.

49.     On behalf of herself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs, and an order enjoining Defendant's deceptive conduct, and any other just and proper relief available under Section 350 of the New York General Business Law.

## COUNT III

### Breach of Express Warranty

50.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

51.     Plaintiff brings this claim individually and on behalf of members of the Class and New York Subclass against Defendant.

52.     In connection with the sale of the Eggs, Defendant, as the producer, marketer, distributor, and/or seller issued written warranties by representing that the Eggs are "Free Range" and that "Most hens don't have it as good as Nellie's…. Our hens can peck, perch, and play on plenty of green grass."  The packaging similarly contained misleading images of hens living outdoors, as alleged above.

53.     In fact, the Eggs do not conform to the above-referenced representations because Nellie's hens are instead crammed into sheds up to 20,000 at a time, preventing them from extending their wings, foraging or making their way to the outdoor space that Defendant advertises so prominently.

54.     Plaintiff and the members of the proposed Class and the New York Subclass were injured as a direct and proximate result of Defendant's breach because (a) they would not have purchased the Eggs if they had known that the Nellie's representations with regard to their hens

and Egg production were false, and (b) they overpaid for the Eggs on account of the misrepresentations.

55.    Plaintiff's counsel notified Defendant of her claims in a demand letter shortly after learning about its breach of warranty, sent via FedEx, on February 19, 2021.

## COUNT IV
### Fraud

56.    Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

57.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and New York Subclass against Defendant.

58.    As discussed above, Defendant misrepresented on the Egg's packaging that the Eggs are "Free Range" and that "Most hens don't have it as good as Nellie's…. Our hens can peck, perch, and play on plenty of green grass."  The packaging similarly contained misleading images of hens living outdoors, as alleged above.

59.    The false and misleading representations and omissions were made with knowledge of their falsehood.  Defendant is a top distributor of eggs in the United States that is undoubtedly aware of its farmers' practices.  Nonetheless, Defendant continues to sell its Eggs to unsuspecting consumers using these false and misleading representations and omissions.

60.    Nellies is aware of how the term "Free Range" is perceived by consumers, as evidenced by their website and other promotional materials.

61.    The false and misleading representations and omissions were made by Defendant, upon which Plaintiff and members of the proposed Class and New York Subclass reasonably and justifiably relied, and were intended to induce and actually induced Plaintiff and members of the proposed Class and New York Subclass to purchase the Devices.

62.     The fraudulent actions of Defendant caused damage to Plaintiff and members of the proposed Class and New York Subclass, who are entitled to damages and other legal and equitable relief as a result.

## **RELIEF DEMANDED**

63.     WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a.     For an order certifying the nationwide Class and the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representatives of the Class and New York Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and New York Subclass members;

b.     For an order declaring that Defendant's conduct violates the statutes referenced herein;

c.     For an order finding in favor of Plaintiff, the nationwide Class, and the New York Subclass on all causes of action asserted herein;

d.     For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e.     For prejudgment interest on all amounts awarded;

f.     For an order of restitution and all other forms of equitable monetary relief;

g.     For an order enjoining Defendant from continuing the illegal practices detailed herein and compelling Defendant to undertake a corrective advertising campaign; and

h.     For an order awarding Plaintiff and the Class and New York Subclass their reasonable attorneys' fees and expenses and costs of suit.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated:  April 21, 2021                    Respectfully submitted,

                                          **BURSOR & FISHER, P.A.**

By:  /s/ *Yitzchak Kopel*
    Yitzchak Kopel


Scott A. Bursor
Yitzchak Kopel
888 Seventh Avenue
New York, NY 10019
Tel:  (646) 837-7150
Fax: (212) 989-9163
E-Mail:  scott@bursor.com
      ykopel@bursor.com


*Attorneys for Plaintiff*