**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CONSTANCE MOGULL, individually and on behalf of all others similarly situated,<br><br>                             Plaintiff,<br>v.<br><br>PETE AND GERRY'S ORGANICS, LLC,<br><br>                             Defendant. | **CASE NO. 7:21-cv-03521-VB**<br><br>**FIRST AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Constance Mogull ("Plaintiff" or "Ms. Mogull"), by and through her attorneys, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge, against Defendant Pete and Gerry's Organics, LLC ("Nellie's" or "Defendant").

## NATURE OF THE ACTION

1.      This is a class action lawsuit on behalf of purchasers of Nellie's Free Range Eggs (the "Eggs") in the United States.

2.      Defendant, the distributor of the Eggs, falsely markets them as being "Free Range" eggs from hens raised in humane living conditions.

3.      In fact, while boasting about the living conditions of Nellies' hens, Defendant goes as far as to draw a contrast between its farms with other farms with purportedly less humane conditions:

> Most hens don't have it as good as Nellie's.  9 out of 10 hens in the U.S. are kept in tiny cages at giant egg factories housing millions of birds. Sadly, even "cage-free" is now being used to describe hens that are crowded into large, stacked cages on factory farms, who never see the sun.  Nellie's small family farms are all

1

Certified Humane Free-Range.  Our hens can peck, perch, and play on plenty of green grass.









4.    This statement and this imagery are reinforced by Defendants' further statements that the Eggs come from "Outdoor Forage" hens.

5.    These representations led Plaintiff and other reasonable consumers to understand that Defendant's hens had space to move around both indoors and outdoors, that the hens in fact spent time outdoors, and that Defendant's hens have better lives than other hens because they have more access to the outdoors.

6.    Unfortunately for consumers, none of this is accurate.  Defendant's portrait of a its hens' "free range" lifestyle is far from the reality.  Defendant's hens are crammed into sheds up to 20,000 at a time, preventing them from extending their wings, foraging or making their way to the outdoor space Defendant advertises so prominently.



7.     These conditions are a very far cry from the impression reasonable consumers gain from Defendant's representations and photographs on the Eggs' packaging.

8.     Media on Defendant's own website provides powerful evidence of how consumers interpret its claim that the Eggs are "free range."  In a video found on the Nellie's YouTube Channel titled "Nellie's Free Range Eggs – Understanding Eggs," Nellie's purports to provide a "Helpful explanation of some of the terms used on egg cartons and their validity from Nellie's Free Range Eggs."[1]

9.     The video discusses the difference between specialized egg labels: "all natural farm fresh," "cage free," and "free range."[2]  The narrator describes a "cage free" hen as "still liv[ing] inside a space much like a large overcrowded warehouse"—deeming it "still a pretty grim existence" because "she'll never get to see the outdoors or have the environment she needs to act like a normal hen." For comparison, the video includes an image of a cage free farm:[3]

---

[1] https://www.youtube.com/watch?v=b62wACS0ln0 (last visited March 23, 2021)

[2] *Id*.

[3] *Id*.

4



In contrast, the video argues, the "hen that made [a Nellie's egg]?  Well, she's one happpy hen.  Our free-range hens get to live their lives like real hens, with access to pasture everyday in good weather.  Our hens can spread their wings, forage in the fields, or scratch in the dirt."[4]  This narration is accompanied with a series of images purportedly depicting Nellie's farms:

---

[4] *Id.*



Nellie's Free Range Eggs - Understanding Eggs

13,903 views • Aug 31, 2016

LIKE    DISLIKE    SHARE    SAVE    ...



Nellie's Free Range Eggs - Understanding Eggs

13,903 views • Aug 31, 2016

LIKE    DISLIKE    SHARE    SAVE    ...



Nellie's Free Range Eggs - Understanding Eggs
13,906 views • Aug 31, 2016

Notably, the interior of a Nellie's henhouse is never shown in the video.  The video ends with a comparison of "all natural," "cage free" and Nellie's Free Range Eggs, and shows that only Nellie's eggs come from "small farms" where the birds are given "room to stretch" and "outdoor access."[5]

10.    It is clear that for Nellies and for consumers, the promise "Free Range" means what it sounds like.  On the Nellies website, under the Heading "Understanding Free Range Vs. Cage Free" Nellie's states that

> Most "cage-free" farms pack hundreds of thousands of hens into multi-story steel enclosures that look an awful lot like massive cages. Nellie's hens have the freedom to move about their barns and their adjoining pasture at will. Our hens live in a healthy, happy environment – just as it's meant to be![6]

---

[5] *Id.*

[6] https://www.nelliesfreerange.com/our-hens/free-range-hens

7



11.     On another page on Defendant's website, Nellies represents that "Life On a Free Range Farm" means that "Our happy hens are free to roam and strut throughout their wide open pasture. They peck at bugs and flowers, cluck around in groups, and just live as free as a bird all day long."[7]



12.     The Nellie's website contains an FAQ page.  One of the questions posed is "What Does Free Range Mean?".  Nellies answers

> Each of our partner farms follows the Humane Farm Animal Care (HFAC) Certified Humane Free Range standards**. Being free range means that during most times of the day and year, our hens are free to roam outside as they please. This is very different from cage free,** which typically does not involve any amount of outdoor access.
>
> We do have to ensure that our free range hens are safe from predators and disease, so we can't allow them outside if ground predators such as fox or coyote are seen

---

[7] https://www.nelliesfreerange.com/our-hens/free-range-farms

in the immediate area. During migratory bird season, we protect our birds from exposure to diseases such as avian mites or avian flu. On rainy or cold days, our hens enjoy dust bathing and socializing in their spacious hen houses.[8]

(emphasis added).

13.    The Nellie's FAQ also contrasts cage-free and "free range" eggs by asking and answering the question "What is cage-free?  Is it the same thing as free range?".[9]  Nellie's answers:

> Not at all! Cage free does represent an incremental improvement over the current industry practice of battery cages where hens can't move. But despite the name, Cage Free is still caged. The new aviary systems being rushed to market to meet the demand for cage free are gigantic floor to ceiling metal enclosures full of layers, catwalks, and doors. It's a bit better of a life than not being able to move, but the hens never see the outside and these are still very much factory farms with all the inhumane practices intact.[10]

14.    On the Pete and Gerry's website (the parent company for Nellie's), Pete and Gerry's represents that "Free Range" refers not only to "Certified Humane" eggs, but also "easy pasture access," "Outdoor shade structures," "No cages," and "Spacious, single-level barns."[11]



---

[8] https://www.nelliesfreerange.com/about-us/faqs

[9] *Id.*

[10] *Id.*

[11] https://www.peteandgerrys.com/our-hens

15.     The Pete and Gerry's website also contains an FAQ page.  Included on this page is the question "What does free range really mean?".[12]  Pete and Gerry's answers:

> Free range means what it sounds like, which is during most times of the day and year, our hens are free to roam outside as they please. This is very different from Cage Free, which sounds good, and is better than being in a tiny cage, but still basically means that you are in a massive warehouse of a barn with hundreds of thousands of other hens, in floor to ceiling caged enclosures, with no access to the outdoors. So not exactly idyllic.[13]

16.     The FAQ also contrasts "Free Range" with "Cage Free" eggs by posing the question "Is [Free Range] the same thing as cage free?".[14]  The answer is strongly negative:

> Not even close. Cage Free is rapidly becoming the new standard (though converting all of the factory farms from battery cages to cage free will take a decade or more) but it's nothing like free range. In fact, it doesn't even mean what it says. The hens are still packed into giant industrial scale warehouses with floor to ceiling cages (generally called "aviary systems"). The only difference is that they have a little more freedom of movement within the system. That's not insignificant given how cruel the current battery cages are, but it's a far cry from one of our "floor barns" where hens can go wherever they, perch, hang out with pals, or go outside to forage for insects or dust bathe. Cage Free is just a factory farm with a slightly less cruel cage system than before.[15]

17.     Defendant's practices clearly do not live up to its own interpretation of the term "Free Range" and the Eggs' packaging images, let alone the interpretation of consumers:

---

[12] https://www.peteandgerrys.com/faqs

[13] *Id.*

[14] *Id.*

[15] *Id.*

**What Nellie's advertises to be**



**What Nellie's claims it is not**          **Nellie's actual supplier**





18.     As shown in the above image comparisons, the conditions in Defendant's henhouses are virtually indistinguishable as those from the example they show as being not "Free Range" where hens are essentially "liv[ing] inside a space much like a large overcrowded warehouse."  Nellie's itself describes this as a "grim existence" for these hens.  But contrary to its packaging representations, that is precisely how Nellie's own hens live.

19.     Further exacerbating the issue, Defendant's hens can only get outside through small hatches cut at intervals along the sides of the shed.  The hatches are closed all winter and

during inclement weather.  In pleasant weather the hatches are closed at night and are not opened until 1 pm the next day.









20.     Because of this overcrowding and limited time that the hatches are open, **many of Defendant's hens are unable to ever access the hatches or the outdoor space Defendant advertises** so prominently.

21.     A 2016 consumer survey conducted at the University of Bath found that the top

reason consumers purchase eggs labeled as "free range" is because "Hens are happier."[16]

**Figure 1:** The reasons selected by consumer respondents for buying free-range eggs. Multiple options could be selected.



22.     But Nellie's hens are not happier.  They live under conditions comparable to those

that Defendant itself has labeled as a "grim existence."

23.     Consumers were deceived by Defendant's marketing of the Eggs.

24.     The USDA has published multiple definitions of the term "free range" despite the

fact that neither the USDA nor the FDA regulate the term "free range."   The website states:

---

[16] https://purehost.bath.ac.uk/ws/files/158352483/Accepted_Version.pdf (last visited March 23, 2021)

Eggs packed in USDA grademarked consumer packages labeled as free range must be produced by hens that **are able to roam vertically and horizontally in indoor houses**, and have access to fresh food and water, and **continuous access to the outdoors during their laying cycle**. The outdoor area may be fenced and/or covered with netting-like material. Housing systems vary from farm-to-farm, and can include multi-tier aviaries. They must allow hens to exhibit natural behaviors and include enrichments such as scratch areas, perches and nests. **Hens must** have access to litter, protection from predators **and be able to move in a barn in a manner that promotes bird welfare**.[17]

(emphasis added). The Nellie's packaging is not USDA grademarked.

25.     The USDA Website also has a glossary of terms, which includes the following definition for "Free Range Husbandry": "A system of animal management where **animals are not confined and can freely roam and forage over a large area of open land**."[18]

26.     CHOICE, a consumer advocacy group, has conducted research showing that the following percentages of consumers believed it is "important, very important or essential" that the following elements are included in a standardized definition of "free range"[19]:

- that birds actually go outside regularly (87%)

- that birds have room to move comfortably when they are outdoors (91%)

- that birds have room to move comfortably when they are inside the barn (91%)

- that farmers undertake animal welfare practices in the production of their eggs (89%).

27.     As CHOICE head of Media Tom Godfrey stated:

This is a labelling issue… Consumers have a firm idea of what they believe free-range to mean and they want a standard that reflects these expectations. Creating a new category such as 'access to range' will provide consumer choice and confidence while catering to different production models.[20]

---

[17] https://www.ams.usda.gov/publications/qa-shell-eggs

[18] https://agclass.nal.usda.gov/mtwdk.exe?k=glossary&l=60&w=6668&s=5&t=2 (emphasis added)

[19] https://www.choice.com.au/food-and-drink/meat-fish-and-eggs/eggs/articles/new-free-range-egg-research

[20] *Id.*

28.     The NPR Article "Farm Fresh? Natural? Eggs Not Always What They're Cracked Up To Be" illustrates the disconnect between consumer perception and the reality of Nellie's eggs.[21]  The article contains the following section on the term "Free range"

**Free-Range**

*What You Might Think It Means:* Hens playfully strolling and tumbling down green hills, home on the range.

*What It Actually Means:* Free-range means cage-free plus "access to the outdoors." But as Mark Kastel of the Cornucopia Institute notes, this "access" typically means a few small doors that lead to a screened-in porch with cement, dirt or a modicum of grass. And often, Kastel says, industrial fans that suck ammonia out of the building create "hurricane winds" through the small doorways, "and the birds don't really want to walk through that."

Kastel claims that the vast majority of free-range birds in commercial egg facilities never actually go outside. So in most cases, he says, free-range means the same thing as cage-free. Unlike in poultry production, there's no government oversight of the term "free range" when it comes to eggs, so companies can more or less interpret it as they see fit. [22]

29.     The disconnect between Nellie's representations about the Eggs and reality is further demonstrated by a video where shoppers exiting a Brooklyn, New York Whole Foods supermarket were asked if they had purchased Nellie's Eggs.  Shoppers who answered in the affirmative were asked why they chose Nellie's, and their answers included "I do look for 'free range.'  I just feel like it's less cruel[,]" and "'Free range' because I care about the animals and how they are treated."[23]

---

[21] https://www.npr.org/sections/thesalt/2014/12/23/370377902/farm-fresh-natural-eggs-not-always-what-they-re-cracked-up-to-be

[22] *Id.*

[23] https://www.youtube.com/watch?v=x9GksLy2R3A (last visited March 23, 2021)



Shoppers React to Nellie's "Free Range" Eggs

9,759 views • Oct 30, 2018                    324     35     SHARE    SAVE



Shoppers React to Nellie's "Free Range" Eggs

9,759 views • Oct 30, 2018              324     35     SHARE    SAVE

30.     The same Nellie's Eggs purchasers were then shown video of the actual conditions on Nellie's farms, and asked for their thoughts.  Their responses included "Well I think it's really deceptive.  That's disgusting what you showed me[,]" "Another big lie[,]" "It's definitely less 'free range' than you think[,]" and "It's awful.  That is not what I imagined 'free range' to be." [24]



Shoppers React to Nellie's "Free Range" Eggs

9,759 views • Oct 30, 2018

---

[24] *Id.*



**Shoppers React to Nellie's "Free Range" Eggs**

9,759 views • Oct 30, 2018
  324   35  SHARE  SAVE



**Shoppers React to Nellie's "Free Range" Eggs**

9,759 views • Oct 30, 2018
  324   35  SHARE  SAVE

31.     When asked the question "After seeing this, would you buy Nellie's again?" all of the customers in the video answered that they would not.[25]

32.     Consumers like Plaintiff pay more for Nellie's Eggs than eggs that do not purport to be Free Range and bear images invoking extension outdoor space:

| Egg Brand[26] | Carton | Claims | Price[27] |
|---|---|---|---|
| Nellie's Free-Range Grade A Large Brown Eggs – 12ct |  | *See supra* | $4.79 |
| Grade A large eggs – 12ct – Good & Gather |  | "Large Fresh Grade A Eggs" | $2.29 |
| Cage-Free Grade A Large Brown Eggs – 12ct – Good & Gather |  | "Cage free" "contains 250mg Omega-3 Fatty Acid & 300ug Lutein Per Egg" | $2.59 |
| Eggland's Best Grade A Large Eggs – 12ct |  | "Now! For Your Nutritious Diet" "Excellent source of… Vitamins D, E, B2, B12, B5" "Plus- 125mg Omega 3, 25% less Saturated Fat than Regular Eggs" "Most Trusted By Shoppers" | $2.79 |

---

[25] *Id.*

[26] For the purpose of equal comparison, all eggs selected are "Grade A" and size "large"

[27] Prices from target.com using zip code 10106 on 4/9/2021

| Organic Cage-Free Fresh Grade A large Brown Eggs – 12 ct – Good & Gather |  | "Organic" "Cage free" | $3.39 |
| --- | --- | --- | --- |

33.    Plaintiff is a purchaser of Nellie's Eggs who asserts claims for fraud, breach of express warranty, and violations the consumer protection laws of the state of New York, on behalf of herself and all similarly situated purchasers of the Eggs.

**PARTIES**

34.    Plaintiff Constance Mogull is a resident of Mamaroneck, New York.  Ms. Mogull purchased the Eggs on many occasions throughout 2018 and 2019 from Stop and Shop in Larchmont, NY.  Prior to purchasing the Eggs, Plaintiff carefully viewed and read the Eggs' labeling, including the representations that the Eggs are "Free Range," that "Most hens don't have it as good as Nellie's…. Our hens can peck, perch, and play on plenty of green grass[,]" and that the Eggs are from "Outdoor Forage, 100% Vegetarian Feed" hens, and the accompanying photographs and imagery.  Plaintiff understood these statements and the photographs on the packaging to mean that Defendant's hens had space to move around both indoors and outdoors, that the hens in fact spent time outdoors, and that Defendant's hens have better lives than other hens because they have more access to the outdoors.

35.    Defendant Pete and Gerry's Organics, LLC is a New Hampshire corporation headquartered in Monroe, New Hampshire. Pete and Gerry's is one of the nation's largest sellers of eggs, with $177 million in reported sales revenue in 2017.

36.    Defendants sell Nellie's eggs in more than 9,600 retailers across the country. As of 2017, Nellie's represented that it produces its eggs through a network of "family" farms located in 12 states, including New York, Pennsylvania, New Jersey, and Vermont.

## JURISDICTION AND VENUE

37.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)

because there are more than 100 class members and the aggregate amount in controversy exceeds

$5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of

a state different from Defendant.

38.     This Court has personal jurisdiction over Defendant because Defendant conducts

business in New York.  Defendant has marketed, promoted, distributed, and sold the Eggs in

New York, rendering exercise of jurisdiction by New York courts permissible.

39.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because this

is a judicial district in which a substantial part of the events or omissions giving rise to the claim

occurred.

40.     All conditions precedent necessary for filing this Complaint have been satisfied

and/or such conditions have been waived by the conduct of the Defendant.

## CLASS REPRESENTATION ALLEGATIONS

41.     Plaintiff seeks to represent a class defined as all persons in the United States who

purchased the Eggs (the "Class").  Excluded from the Class are persons who made such purchase

for purpose of resale.

42.     Plaintiff also seeks to represent a subclass defined as all Class members who

purchased the Eggs in New York (the "New York Subclass").

43.     Members of the Class and New York Subclass are so numerous that their

individual joinder herein is impracticable.  On information and belief, members of the Class and

New York Subclass number in the millions.  The precise number of Class members and their

identities are unknown to Plaintiff at this time but may be determined through discovery.  Class

members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

44.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to whether Defendant's labeling, marketing and promotion of the Devices is false and misleading.

45.     The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff was exposed to Defendant's false and misleading marketing and promotional materials and representations, purchased the Eggs, and suffered a loss as a result of that purchase.

46.     Plaintiff is an adequate representative of the Class and New York Subclass because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

47.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of

Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I

### Deceptive Acts Or Practices, New York Gen. Bus. Law § 349

48.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

49.     Plaintiff brings this claim individually and on behalf of members of the New York Subclass against Defendant.

50.     By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by making false representations on the label of the Eggs.

51.     The foregoing deceptive acts and practices were directed at consumers.

52.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the production and quality of the Eggs.

53.     Plaintiff and members of the New York Subclass were injured as a result because (a) they would not have purchased the Eggs if they had known that the Nellie's representations with regard to their hens and Egg production were false, and (b) they overpaid for the Eggs on account of Nellie's representations.

54.     On behalf of herself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, reasonable attorneys' fees and costs, and any other just and proper relief available under Section 349 of the New York General Business Law.

## COUNT II

### False Advertising, New York Gen. Bus. Law § 350

55.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

56.     Plaintiff brings this claim individually and on behalf of members of the New York Subclass against Defendant.

57.     Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York General Business Law by misrepresenting that the Eggs are "Free Range," that "Most hens don't have it as good as Nellie's…. Our hens can peck, perch, and play on plenty of green grass[,]" and that the Eggs come from "Outdoor Forage, 100% Vegetarian Feed" hens.  The packaging similarly contained misleading images of hens living outdoors, as alleged above.

58.     Plaintiff understood these statements and the photographs on the packaging to mean that Defendant's hens had space to move around both indoors and outdoors, that the hens in fact spent time outdoors, and that Defendant's hens have better lives than other hens because they have more access to the outdoors.

59.     The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

60.     This misrepresentation has resulted in consumer injury or harm to the public interest.

61.     As a result of this misrepresentation, Plaintiff and members of the New York Subclass have suffered economic injury because (a) they would not have purchased the Eggs if they had known that the Nellie's representations with regard to their hens and Egg production were false, and (b) they overpaid for the Eggs on account of the misrepresentation.

62.     On behalf of herself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs and any other just and proper relief available under Section 350 of the New York General Business Law.

**COUNT III**

**Breach of Express Warranty**

63.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

64.     Plaintiff brings this claim individually and on behalf of members of the Class and New York Subclass against Defendant.

65.     In connection with the sale of the Eggs, Defendant, as the producer, marketer, distributor, and/or seller issued written warranties by representing that the Eggs are "Free Range" and that "Most hens don't have it as good as Nellie's…. Our hens can peck, perch, and play on plenty of green grass."  The packaging similarly contained misleading images of hens living outdoors, as alleged above.

66.     In fact, the Eggs do not conform to the above-referenced representations because Nellie's hens are instead crammed into sheds up to 20,000 at a time, preventing them from extending their wings, foraging or making their way to the outdoor space that Defendant advertises so prominently.

67.     Plaintiff and the members of the proposed Class and the New York Subclass were injured as a direct and proximate result of Defendant's breach because (a) they would not have purchased the Eggs if they had known that the Nellie's representations with regard to their hens

and Egg production were false, and (b) they overpaid for the Eggs on account of the misrepresentations.

68.     Plaintiff's counsel notified Defendant of her claims in a demand letter shortly after learning about its breach of warranty, sent via FedEx, on February 19, 2021.

69.     The demand letter was sent within a reasonable time (less than a month) after Plaintiff discovered Defendant's breach and learned of the nature of Defendant's practices.  The letter therefore complied with all respects of N.Y. U.C.C. § 2-607.

## COUNT IV
### Fraud

70.     Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

71.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and New York Subclass against Defendant.

72.     As discussed above, Defendant misrepresented on the Egg's packaging that the Eggs are "Free Range" and that "Most hens don't have it as good as Nellie's…. Our hens can peck, perch, and play on plenty of green grass."  The packaging similarly contained misleading images of hens living outdoors, as alleged above.

73.     The false and misleading representations and omissions were made with knowledge of their falsehood.  Defendant is a top distributor of eggs in the United States that is undoubtedly aware of its farmers' practices.  Nonetheless, Defendant continues to sell its Eggs to unsuspecting consumers using these false and misleading representations and omissions.

74.     Nellies is aware of how the term "Free Range" is perceived by consumers, as evidenced by their website and other promotional materials.

75.     The false and misleading representations and omissions were made by Defendant, upon which Plaintiff and members of the proposed Class and New York Subclass reasonably and

justifiably relied, and were intended to induce and actually induced Plaintiff and members of the proposed Class and New York Subclass to purchase the Devices.

76.     The fraudulent actions of Defendant caused damage to Plaintiff and members of the proposed Class and New York Subclass, who are entitled to damages and other legal and equitable relief as a result.

## **RELIEF DEMANDED**

77.     WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a.      For an order certifying the nationwide Class and the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representatives of the Class and New York Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and New York Subclass members;

b.      For an order declaring that Defendant's conduct violates the statutes referenced herein;

c.      For an order finding in favor of Plaintiff, the nationwide Class, and the New York Subclass on all causes of action asserted herein;

d.      For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e.      For prejudgment interest on all amounts awarded;

f.      For an order of restitution and all other forms of equitable monetary relief; and

g.      For an order awarding Plaintiff and the Class and New York Subclass their reasonable attorneys' fees and expenses and costs of suit.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated:  June 10, 2021              Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:  /s/ *Yitzchak Kopel*
           Yitzchak Kopel


Scott A. Bursor
Yitzchak Kopel
888 Seventh Avenue
New York, NY 10019
Tel:  (646) 837-7150
Fax: (212) 989-9163
E-Mail:  scott@bursor.com
          ykopel@bursor.com


*Attorneys for Plaintiff*