UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CONSTANCE MOGULL, individually and on behalf
of all others similarly situated,

                                                    Case No 21-cv-03521 (VB)

                            Plaintiff,

            - against -

PETE AND GERRY'S ORGANICS, LLC,

                            Defendant.
------------------------------------------------------------------X


## DEFENDANT PETE AND GERRY'S ORGANICS, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT


                            Lewis Brisbois Bisgaard & Smith LLP
                            77 Water Street, Suite 2100
                            New York, NY 10005
                            212.232.1322

                            Preti Flaherty Beliveau & Pachios LLP
                            P.O. Box 1318
                            Concord, NH 03302-1318
                            603-410-1500

                            Attorneys for Defendants

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................ 3

ARGUMENT .................................................................................................................. 4

    A.    The FAC fails to plead a plausible claim under N.Y. G.B.L. §§ 349 or
           350 ............................................................................................................. 5

           1.    The context of the challenged statements is crucial to the
                court's analysis of whether they are misleading. ................................ 6

           2.    The statements Plaintiff objects to are true. ......................................... 7

           3.    In the alternative, the statements are nonactionable puffery. .......... 12

    B.    The FAC lacks the necessary particularity to plead a fraud claim. ............. 17

    C.    Plaintiff fails to allege sufficient facts to support an express
           warranty claim ......................................................................................... 19

           1.    Plaintiff has not adequately alleged the existence of a
                material statement amounting to a warranty. ................................... 20

            2.    Plaintiff has not alleged sufficient facts to show timely or
                sufficient notice. ................................................................................ 21

    D.    Discovery should be stayed pending resolution of the motion to
           dismiss. .................................................................................................... 23

CONCLUSION ............................................................................................................. 24

17709520.1

## TABLE OF AUTHORITIES

**Cases**

*Am. Mfg. Co. v. U.S. Shipping Bd. Emergency Fleet Corp.*,
   7 F.2d 565 (2d Cir. 1925) ................................................................. 22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................... 4, 5

*Avnet, Inc. v. American Motorists Ins. Co.*, 115 F.R.D. 588 (S.D.N.Y. 1987) .......... 23

*Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170 (E.D.N.Y. 2018) ...................... 5

*Barton v. Pret A Manger (USA) Ltd.*, No. 1:20-CV-04815 GHW,
   2021 WL 1664319 (S.D.N.Y. Apr. 27, 2021) ........................................... 22

*Bassaw v. United Indus. Corp.*, 482 F. Supp. 3d 80 (S.D.N.Y. 2020) ................ 21, 22

*Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29 (E.D.N.Y. 2015) ...................... 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................... 4, 5

*Bernie v. Barilla S.p.A.*, 964 F.3d 141, 149 (2d Cir. 2020) ........................... 17

*Buonasera v. Honest Co.*, 208 F. Supp. 3d 555 (S.D.N.Y. 2016) ......................... 5

*Cablevision Sys. Corp. v. Verizon New York Inc.*, 119 F. Supp. 3d 39
   (E.D.N.Y. 2015) ...................................................................... 13

*Campbell v. Whole Foods Mkt. Grp., Inc.*, No. 1:20-CV-01291-GHW,
   2021 WL 355405 (S.D.N.Y. Feb. 2, 2021) ............................................. 12

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ........................... 8

*Chill v. Gen. Elec. Co.*, 101 F.3d 263 (2d Cir. 1996) ............................... 18, 19

*Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492 (2d Cir. 2020) ............... 7, 11, 12

*Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111 (2d Cir. 2007) .......................... 5

*DaCorta v. AM Retail Group, Inc.*, No. 16-CIV-01748, 2018 WL 557909
   (S.D.N.Y. Jan. 23, 2018) ............................................................. 24

*DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ......................... 8

*Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337 (S.D.N.Y. 2020) ........................................ 19

*Faber v. Metro. Life Ins. Co.*, 648 F.3d 98 (2d Cir. 2011) ............................................................ 4

*Fink v. Time Warner Cable*, 810 F. Supp. 2d 633 (S.D.N.Y. 2011) ........................................... 13

*Frota v. Prudential-Bache Sec., Inc.*, 639 F. Supp. 1186 (S.D.N.Y. 1986) ................................ 16

*Gala Trading, Inc. v. Adrienne, Inc.*, 174 A.D.2d 478 (N.Y. App. Div. 1st Dep't 1991) ......... 22

*Geffner v. Coca-Cola Co.*, 928 F.3d 198 (2d Cir. 2019) ................................................................ 7

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F.Supp.3d 467
    (S.D.N.Y. 2014) ....................................................................................................................... 20

*Hesse v. Godiva Chocolatier, Inc.*, 463 F.Supp.3d 453 (S.D.N.Y. 2020) .................................. 19

*Hubbard v. Gen. Motors Corp.*, No. 95-CIV-4362, 1996 WL 274018
    (S.D.N.Y. May 22, 1996) ........................................................................................................ 20

*Icon Health & Fitness, Inc. v. Nautilus Group, Inc.*, Civ. No. 02-CIV-109,
    2004 WL 6031124 (D. Utah Dec. 21, 2004) ........................................................................... 13

*In re Gotham Silver Co.*, 91 F. Supp. 520, 524 (S.D.N.Y. 1950) ............................................... 22

*In re Scotts EZ Seed Litig.*, No. 12-CIV-4727, 2013 WL 2303727
    (S.D.N.Y. May 22, 2013) ................................................................................................... 15, 16

*In re Welspun Litig.*, No. 16 CV 6792 (VB), 2019 WL 2174089
    (S.D.N.Y. May 20, 2019) ................................................................................................... 18, 19

*Jessani v. Monini N. Am., Inc.*, 744 Fed. App'x 18 (2d Cir. 2018) ............................................. 5

*Lipton v. Nature Co.*, 71 F.3d 464 (2d Cir.1995) ....................................................................... 13

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160
    (2d Cir. 2015) ........................................................................................................................... 18

*Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226
    (S.D.N.Y. 2020) .................................................................................................................. passim

*Magruder v. Halliburton Co.*, 359 F. Supp. 3d 452 (N.D. Tex. 2018) ...................................... 14

iii

*Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018) ............................................... 12

*Mason v. Reed's Inc.*, No. 18-CV-10826-JGK, 2021 WL 293326
(S.D.N.Y. Jan. 28, 2021) ............................................................................................. 19

*Maurizio v. Goldsmith,* 230 F.3d 518 521 (2d Cir. 2000) ............................................. 5

*Moxie Indus., Inc. v. Hayden,* 677 F. Supp. 187 (S.D.N.Y.1988)................................. 22

*Myers-Taylor v. Ornau Foods North America, Inc.*, 18-CIV-1538,
2019 WL 424703 (S.D. Cal. Feb. 4, 2019) ........................................................... 14, 15

*Ong v. Chipotle Mexican Grill, Inc.*, No. 16-CIV-141 (KPF),
2017 WL 933108 (S.D.N.Y. Mar. 8, 2017) ................................................................. 13

*PETA v. Whole Foods Market California, Inc.*, No. 15-CV-4301, 2006 WL 1642577, at *3
(N.D. Cal. Apr. 26, 2016) ............................................................................................ 16

*Petrosino v. Stearn's Prod., Inc.*, No. 16-CV-7735 (NSR),
2018 WL 1614349 (S.D.N.Y. Mar. 30, 2018) ............................................................ 21

*Tardella v. RJR Nabisco, Inc.*, 178 A.D.2d 737 (N.Y. App. Div. 3d Dep't 1991).................... 20

*Tears v. Bos. Sci. Corp.*, 344 F. Supp. 3d 500 (S.D.N.Y. 2018) .................................. 20

*Telit Wireless Sols., Inc. v. Axesstel, Inc.*, No. 15-CV-5278 (KBF),
2016 WL 1587246 (S.D.N.Y. Apr. 18, 2016) ............................................................. 21

*Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144 (2d Cir. 2007)................................ 17

*Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251 (E.D.N.Y. 2014)........................ 21

*Tyman v. Pfizer, Inc.*, No. 16-CV-06941 (LTS) (BCM), 2017 WL 6988936
(S.D.N.Y. Dec. 27, 2017) ............................................................................................ 21

*Workman v. Plum Inc.*, 141 F. Supp. 3d 1032 (N.D. Cal. 2015) ................................... 5

*Wynn v. Topco Assocs., LLC*, No. 19-CV-11104 (RA), 2021 WL 168541
(S.D.N.Y. Jan. 19, 2021) ............................................................................................. 15

## Statutes

N.Y. U.C.C. § 2-607 ............................................................................................. 21, 22

New York General Business Law Section 349 .................................................................. 4, 5

17709520.1

New York General Business Law Section 350 ..................................................................... 4, 5

## Other Authorities
*Chickens Crammed Inside Shed on 'Free-Range' Farm*, YouTube (Feb. 27, 2018) ................... 23

HFAC, Animal Care Standards, Egg Laying Hens at p. 15-16 ............................................. 9

*Shoppers React to Nellie's "Free Range" Eggs*, YouTube (Oct. 30, 2018) ............................... 23

## Rules
Fed. R. Civ. P. 9(b)..................................................................................................... 18, 19

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 4, 8

Fed. R. Civ. P. 23(b)(2) .................................................................................................. 17

Fed. R. Civ. P. 26(c) ...................................................................................................... 23

17709520.1

## **INTRODUCTION**

This copycat complaint seeks to revive allegations previously made in a putative class action against Defendant Pete and Gerry's Organics, LLC ("PGO") that was resolved out of court last year after Judge Failla largely dismissed claims made by consumers regarding the advertising and labeling of Nellie's Free Range Eggs ("Nellie's). *See Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226 (S.D.N.Y. 2020). Although the prior action attacked a multitude of statements on the Nellie's packaging and website, Plaintiff Constance Mogull, on behalf of herself and a putative nationwide class of consumers, focuses her attention on one paragraph that used to appear in small print on the bottom of the inside cover of the Nellie's carton:

> Most hens don't have it as good as Nellie's.  9 out of 10 hens in the U.S. are kept in tiny cages at giant egg factories housing millions of birds.  Sadly, even "cage-free" is now being used to describe hens that are crowded into large, stacked cages on factory farms, who never see the sun.  Nellie's small family farms are all Certified Humane Free-Range.  Our hens can peck, perch, and play on plenty of green grass.

First Amended Complaint (hereafter "FAC") ¶ 3. Plaintiff contends this paragraph, along with the phrases "free range," "outdoor forage," and the pictures that appear on Nellie's packaging, "falsely markets [Nellie's eggs] as being 'Free Range' eggs from hens raised in humane living conditions." *Id.* ¶ 2.

Plaintiff does not, however, dispute any of the objective statements made in the challenged paragraph. She does not contend that PGO has misstated the number of hens in the United States that are kept in "tiny cages," or disagree that giant egg factories house millions of hens rather than the 20,000 hens per barn that Plaintiff alleges are kept at

17709520.1

PGO's family farms. The FAC does not allege that hens are kept in cages at PGO's family farms, or that the statement that "Nellie's small family farms are all Certified Humane Free-Range" is inaccurate. Instead, Plaintiff invites the court to ignore the middle three sentences of the paragraph, which provide the crucial context, and just consider the first and last sentences. The court should decline the invitation.

Contrary to what Plaintiff suggests, the Nellie's packaging clearly demonstrates that PGO is drawing a distinction between the manner in which PGO cares for its hens and the manner in which factory farms, housing millions of birds, care for their hens. The context is important because no consumer would reasonably conclude that the statement that "most hens don't have it as good as Nellie's" is deceptive if the Plaintiff concedes Nellie's hens are not among the "9 out of 10 hens in the U.S. [that] are kept in tiny cages."

Similarly, the pictures that Plaintiff includes in paragraph 19 of the FAC, which purportedly show a PGO family farm, undercut her claims that the statement regarding access to the outdoors for Nellie's hens is deceptive. The pictures clearly show openings in the barn at varying intervals, at different heights, and on both sides of the barn. This indicates that hens can, in fact, go outside. Nowhere on the Nellie's packaging is there a representation regarding the frequency or duration of hens leaving the barn; it simply states that hens have the opportunity to do so, which Plaintiff does not contest.

To the extent Plaintiff's claims rest upon complaints about the frequency and duration of outdoor access, statements about "Outdoor Forage," "Free Range" and "plenty of green grass" are classic examples of nonactionable puffery. These are vague, imprecise statements that Plaintiff does not allege have a generally recognized or

17709520.1

objective meaning that can be proven true or false. As a result, Plaintiff fails to plead a plausible claim against PGO under any of the various causes of actions she has asserted.

## FACTUAL BACKGROUND

Plaintiff is a resident of Mamaroneck, New York, who claims to have purchased Nellie's eggs "on many occasions throughout 2018 and 2019 from Stop and Shop in Larchmont, NY." FAC ¶ 34. Plaintiff asserts that she "carefully reviewed" the labeling on Nellie's eggs, "including the representation that the Eggs are 'Free Range,' that 'Most hens don't have it as good as Nellie's…. Our hens can peck, perch, and play on plenty of green grass,'" "Outdoor Forage, 100% Vegetarian Feed," and the "accompanying photographs and imagery." *Id.* Plaintiff contends that she "understood these statements and the photographs on the packaging to mean that Defendant's hens had space to move around both indoors and outdoors, that the hens in fact spent time outdoors, and that Defendant's hens have better lives than other hens because they have more access to the outdoors." *Id.* Plaintiff does not allege that she viewed any of the statements or pictures that appear on PGO's website before making her purchases of Nellie's eggs.

Plaintiff alleges that, contrary to the statements and scenes depicted on Nellie's packaging, hens at PGO's family farms are "crammed into sheds up to 20,000 at a time, preventing them from extending their wings, foraging or making their way to the outdoor spaces Defendant advertises so prominently." *Id.* ¶ 6. Plaintiff cites a "2016 consumer survey" from the United Kingdom that purportedly shows that "the top reason consumers purchase eggs labeled as 'free range' is because 'Hens are happier.'" *Id.* ¶ 21. But Plaintiff contends that "Nellie's hens are not happier." *Id.* ¶ 22.

3

Plaintiff asserts that had she and other members of the putative class known that "Nellie's representations with regard to their hens and Egg production were false," they "would not have purchased the Eggs," and "they overpaid for the Eggs on account of Nellie's representations." *Id.* ¶ 53. Plaintiff asserts claims against PGO under New York General Business Law Sections 349 and 350, as well as claims of breach of express warranty and fraud.

## <u>ARGUMENT</u>

Plaintiff's claims fail at the outset because the FAC does not identify any statements on the Nellie's packaging that are not true. Whether the alleged wrong committed is framed as a deceptive act or practice under G.B.L. § 349 (Count I), false advertising under G.B.L. § 350 (Count II), breach of warranty (Count III), or fraud (Count IV), for Plaintiff to prevail, she must—at a minimum—identify a statement that is false or deceptive. On the face of the FAC, however, the challenged statements are accurate; Plaintiff does not allege any statement on the Nellie's packaging that were false or deceptive. In the alternative, the challenged statements are nonactionable puffery, because a reasonable consumer would not understand them to be making objective factual claims about Nellie's hens that could be proven true or false.

Even though a district court considering a Rule 12(b)(6) motion must "draw all reasonable inferences in [the plaintiff's] favor, [and] 'assume all "well-pleaded factual allegations"' to be true,'" *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (citation omitted), *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) require the court to ultimately determine whether the complaint has "state[d] a

4

claim to relief that is plausible on its face.'" *Iqbal*, at 678  (quoting *Twombly*, at 570). The allegations contained in the FAC fail to meet that standard.

### A. **The FAC fails to plead a plausible claim under N.Y. G.B.L. §§ 349 or 350.**

To state a claim under G.B.L. Sections 349 or 350, a plaintiff must plausibly allege "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518 521 (2d Cir. 2000). To determine whether conduct is materially misleading, courts assess "each allegedly misleading statement in light of its context on the product label or advertisement as a whole," contemplating "the entire mosaic . . . rather than each tile separately." *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 53 (E.D.N.Y. 2015) (citation omitted).

"[P]laintiffs must do more than plausibly allege that a 'label might conceivably be misunderstood by some few consumers.' Plaintiffs must plausibly allege 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Jessani v. Monini N. Am., Inc.*, 744 Fed. App'x 18, 19 (2d Cir. 2018) (summary order) (internal citations omitted). This is an objective inquiry. *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007).

While some district courts have held that it may not be appropriate to resolve the question of what might deceive a reasonable consumer on a motion to dismiss, *see, e.g.*, *Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 567 (S.D.N.Y. 2016), "dismissal is appropriate when the complaint fails to allege facts that state a plausible claim for relief." *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 183 (E.D.N.Y. 2018); *see also, e.g.*, *Workman v. Plum*

*Inc.*, 141 F. Supp. 3d 1032, 1035–37 (N.D. Cal. 2015) (dismissing claims alleging misleading depiction of food groups on bars and puree pouches).

1. **The context of the challenged statements is crucial to the court's analysis of whether they are misleading.**

The statement that is the focus of the FAC appears inconspicuously on the bottom inside flap of the Nellie's carton, not visible to the consumer until the top of the carton is lifted. See FAC ¶ 3 (image on page 3). The statement reads:

> Most hens don't have it as good as Nellie's. 9 out of 10 hens in the U.S. are kept in tiny cages at giant egg factories housing millions of birds. Sadly, even "cage-free" is now being used to describe hens that are crowded into large, stacked cages on factory farms, who never see the sun. Nellie's small family farms are all Certified Humane Free-Range. Our hens can peck, perch, and play on plenty of green grass.

*Id.* Plaintiff also objects to the words "Outdoor Forage" and "100% Vegetarian Feed" which appear on the backside of the carton. *Id.* ¶¶ 3, 4, 57.

Before a consumer would ever see the statements identified above, they would be exposed to the statements "We love our hens, you'll love our eggs," "We love our hens," and "Better lives for hens mean better eggs for you," which appear prominently on the Nellie's egg carton. *See id.* ¶ 3. In *Lugones v. Pete & Gerry's Organic, LLC*, this court held that these representations (as well as others) were nonactionable. *See, e.g.*, 440 F. Supp. 3d at 241 (finding the statements to be "paradigmatic examples of puffery"). Plaintiff does not challenge those representations here.

*Lugones* did find that the plaintiffs had "alleged a viable claim in regards to Defendant's statement that '[m]ost hens don't have it as good as Nellie's . . . . Our hens can peck, perch, and play on plenty of green grass.'" *Id.* at 241 (omission in original). The

6

problem with the analysis in *Lugones* is the ellipsis that connects the two sentences the court found to be actionable—it leaves out the essential context.

The Second Circuit "has repeatedly observed that 'in determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial.'" *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 501 (2d Cir. 2020) (quoting *Geffner v. Coca-Cola Co.*, 928 F.3d 198, 200 (2d Cir. 2019)).  By failing to properly consider the paragraph as a whole, the *Lugones* court missed the "crucial" context of the challenged statements.[1] PGO respectfully submits that if this court follows the Second Circuit's direction that "context is crucial," it should reach a different conclusion than *Lugones* with respect to these statements.

### 2.  The statements Plaintiff objects to are true.

The first sentence of the challenged paragraph—"Most hens don't have it as good as Nellie's"—is true on the face of the Complaint. We know that because the second sentence states: "9 out of 10 hens in the U.S. are kept in tiny cages at giant egg factories housing millions of birds." The FAC does not allege that Nellie's hens are among the 9 out of 10 hens in the U.S. that are "kept in tiny cages…." Instead, the worst Plaintiff has to say about the conditions experienced by Nellie's hens is that they are allegedly "crammed into sheds up to 20,000 at a time . . . ." FAC ¶ 6. Plaintiff objects to the alleged

---

[1] The court's omission is understandable, as the complaint in *Lugones* featured the same omission. *See* Doc. 29, ¶¶ 16, 18, 19, 22, 23, 24, 44, *Lugones*, 440 F. Supp. 3d 226 (S.D.N.Y. 2020) (No. 19 Civ. 2097).  The defendants in *Lugones* did cite the omitted language in one of their filings (a reply memo) (Doc. 34, at 1, *Lugones*, 440 F. Supp. 3d 226 (No. 19 Civ. 2097)), and the omitted language does appear in the *Lugones* decision, 440 F. Supp. 3d at 240—but not at the point in the decision where the court explains its conclusion.  *Id.* at 241.

practice, but based on her own assertions most hens—the 9 out of 10 that are kept in tiny cages at million-bird factories, in some cases with multiple hens locked up in a single cage—in fact don't have it as good as Nellie's hens that live in barns without cages and are free to move about both inside and outside.

The second and third sentences of the challenged paragraph are also nonactionable, because neither makes a claim about Nellie's eggs. The second sentence, as just explained, focuses on factory farms that keep chickens in tiny cages and does not make any claims regarding PGO's practices. Plaintiff does not appear to question the accuracy of the second sentence. The same goes for the third sentence, which asserts that the term "cage-free" is sometimes "used to describe hens that are crowded into large, stacked cages on factory farms, who never see the sun." Again, that is not a statement about practices at PGO's farms, nor is it a statement that Plaintiff appears to believe is false. Instead, the sentence describes something worse than what is alleged against PGO, as there is no allegation in the FAC that PGO's farms keep chickens in cages.

The fourth sentence of the challenged paragraph is also true: "Nellie's small family farms are all Certified Humane Free-Range." Nellie's eggs are in fact a Certified Humane product, and Plaintiff does not claim otherwise. As explained on the PGO website,[2] "Certified Humane is a program of Humane Farm Animal Care, a nonprofit organization

---

[2] "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). The FAC relies extensively on material from the Nellie's website. *See* FAC ¶¶ 8–16. The Court may therefore consider the website in ruling on this motion. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (court may consider document the complaint "relies heavily upon" in ruling on motion to dismiss.) (quotation marks omitted).

whose mission is to improve the lives of all farm animals. Our Certified Humane® label assures that all of our free range farms meet HFAC's rigorous standards and pass their thorough inspection." Ex. A. Plaintiff does not allege that PGO failed to adhere to the Certified Humane standards, nor does she challenge the substance of the standards, which address the outdoor-access issues she is allegedly concerned about.

It is also true that Nellie's eggs are "Free-Range." On the face of the FAC, Nellie's eggs meet the Certified Humane requirements for that designation — that is, the FAC does not allege any facts suggesting that PGO violates the Certified Humane requirements for free-range eggs. The gist of Plaintiff's concern about "Free-Range" is that access to the outdoors is too limited for PGO's hens. *See* FAC ¶¶ 6, 17-19. More specifically, Plaintiff alleges that "Defendant's hens can only get outside through small hatches cut at intervals along the sides of the shed," *id*. ¶ 19; "[t]he hatches are closed all winter and during inclement weather," and "[i]n pleasant weather the hatches are closed at night and are not opened until 1 pm the next day," *id*.; and "[b]ecause of . . . overcrowding and limited time that the hatches are open, many of Defendant's hens are unable to ever access the hatches or the outdoor space . . . ." *Id*. ¶ 20.

The problem for Plaintiff is that the conditions she alleges are not contrary to the Certified Humane requirements for "Free-Range," which require simply that "[o]utdoor access must be provided for a minimum of 6 hours per day during the daytime, except during inclement weather," and that there must be "sufficient exit areas appropriately distributed around the building (i.e. at least one exit every 50 feet (15 m) along one side of the house) to ensure that all hens have ready access to the outdoor area." Ex. B, HFAC,

9

Animal Care Standards, Egg Laying Hens at p. 15-16 (available at https://certifiedhumane.org/our-standards/). Indeed, the conditions Plaintiff alleges are consistent with the explanation on Nellie's own website that Plaintiff herself quotes: "'**Being free range means that during** *most times of the day and year***, our hens** *are free to* **roam outside as they please. This is very different from cage free**, which typically does not involve any amount of outdoor access.'" FAC ¶ 12 (bold in original) (italics added). Contrary to what Plaintiff suggests, Nellie's does not claim that its hens are always outdoors, and instead it states only that the hens have access to the outdoors. That is consistent with Plaintiff's own allegations.

While Plaintiff objects to the use of the term "Free-Range," she does not allege that PGO violates the actual standards that are identified on its packaging. Plaintiff tries to change the subject from the Certified Humane standard that Nellie's eggs meets by pointing out that "[t]he USDA has published multiple definitions of the term 'free range' despite the fact that neither the USDA nor the FDA regulate the term 'free range.'" FAC ¶ 24. Left unexplained is why the publication of multiple definitions of the term "free range" by an agency that does not regulate that term should have any bearing on whether PGO meets the actual definition of "free range" established by the certifying organization (Certified Humane) that it cites on its packaging.[3] Once again, "in determining whether

---

[3] As set forth in more detail below, Plaintiff also identifies a study from the United Kingdom suggesting that consumers perceive the phrase "free range" as meaning "hens are happier," FAC ¶ 21, but that is clearly not an objective standard which can be proven true or false. The additional allegations provided by Plaintiff in the FAC only further reinforce the fact that there is no generally recognized objective standard for the term "free range."

17709520.1

a reasonable consumer would have been misled by a particular advertisement, context is crucial," *Chen*, 954 F.3d at 501, and the context here is that "Nellie's small family farms are all *Certified Humane* Free-Range." FAC ¶ 3 (emphasis added). That is a true statement.

That leaves the fifth and final sentence of the challenged paragraph: "Our hens can peck, perch, and play on plenty of green grass." This statement is, again, true on the face of the FAC. "[P]eck, perch, and play" is a whimsical description of what chickens do in grass. And as compared to the 9 out of 10 hens described in sentences two and three as stuck in cages, Nellie's hens *can* do these things.

The statement is not that every single Nellie's hen pecks, perches, and plays on a fixed amount of green grass at all times—but just that Nellie's hens "can" engage in these activities. As Webster's Ninth New Collegiate Dictionary explains, "can" is "used to indicate possibility <do you think he [can] still be alive><those things [can] happen>"— which is consistent with Plaintiff's own allegation in paragraph 13 that "*many of* Defendant's hens are unable to ever access the hatches or the outdoor space Defendant advertises." FAC ¶ 20 (emphasis added). Even if it were true that "many" of Nellie's hens were unable to access the outdoors, that would mean that some are in fact able—which makes "Our hens can peck, perch, and play on plenty of green grass" a true statement. *See* FAC ¶ 5 ("These representations led Plaintiff and other reasonable consumers to understand . . . that Defendant's hens have better lives than other hens because they have *more* access to the outdoors." (emphasis added)). This is consistent with language Plaintiff cites from Nellie's own website that makes clear that going outside is just one of a number of different things Nellie's hens can do. *See* FAC ¶ 16 (quoting description of "our 'floor

barns' where hens can go wherever they want, perch, hang out with pals, *or go outside* to forage for insects or dust bathe.") (emphasis added).

Because "context is crucial" in determining whether a reasonable consumer would be misled, *Chen*, 954 F.3d at 501, the Court should "consider the challenged advertisement as a whole, including disclaimers and qualifying language." *Campbell v. Whole Foods Mkt. Grp., Inc.*, No. 1:20-CV-01291-GHW, 2021 WL 355405, at *4 (S.D.N.Y. Feb. 2, 2021) (quoting *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018)). The crucial context here is the contrast between the "9 out of 10 hens in the U.S." that "are kept in tiny cages at giant egg factories housing millions of birds," and Nellie's hens, which are not kept in tiny cages, but instead have access to the outdoors. While Nellie's hens may not have unlimited access to the outdoors at all times, it is clear on the face of the FAC that they have greater access to the outdoors than do most hens in the United States. In this context, "Our hens can peck, perch, and play" is a true statement.

As for the words "Outdoor Forage"—if and to the extent that these two words even constitute a factual representation (*see infra*)—the representation being made is simply that Nellie's hens have some access to the outdoors for foraging, and nothing in the FAC suggests otherwise. Nor is there any factual basis in the Complaint for concluding that the statement "100% Vegetarian Feed," *id.* ¶ 44, to the extent that constitutes a factual representation, is not true.

### 3. In the alternative, the statements are nonactionable puffery.

If the Court does not agree that the challenged statements are true on the face of the FAC, at a minimum, it should rule that they are nonactionable puffery because a

17709520.1

reasonable consumer would not take these words as making factual claims about the actual lives Nellie's hens lead that could be proven true or false. "Puffery includes generalized or exaggerated statements which a reasonable consumer would not interpret as a factual claim upon which he could rely." *Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 644 (S.D.N.Y. 2011), *on reconsideration*, 2011 WL 5121068 (S.D.N.Y. Oct. 28, 2011). "Regarding puffery, the Second Circuit has stated that '[s]ubjective claims about products, which cannot be proven either true or false, are not actionable.'" *Id.* (quoting *Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir.1995)); *Cf. Ong v. Chipotle Mexican Grill, Inc.*, No. 16-CIV-141 (KPF), 2017 WL 933108, at *12 (S.D.N.Y. Mar. 8, 2017) (finding generalized statements regarding food-safety programs and protocols to be nonactionable puffery).

The claim that "[m]ost hens don't have it as good as Nellie's" is a claim that Nellie's hens have it *better* than other hens. Courts have held that generalized claims about something being better than something else are subjective claims that cannot be proven true or false, and therefore constitute puffery. *See Cablevision Sys. Corp. v. Verizon New York Inc.*, 119 F. Supp. 3d 39, 53 (E.D.N.Y. 2015) ("That the meaning of 'better' can be questioned not only undermines any claim of falsity, but renders this language inactionable puffery."); *Icon Health & Fitness, Inc. v. Nautilus Group, Inc.*, Civ. No. 02-CIV-109, 2004 WL 6031124, at *23 (D. Utah Dec. 21, 2004) ("The use of the word 'better' indicates a subjective statement—a statement of opinion—that cannot be measured and is not fact.").

The statement "Our hens can peck, perch, and play on plenty of green grass" is, at a minimum, puffery. As just explained, it is a true statement that Nellie's hens have

17709520.1

greater access to the outdoors than 90% of U.S. hens.  But even if the Court does not agree that the statement is literally true, it is at worst a puffery-infused illustration of the undisputed fact that Nellie's hens do indeed have more access to the outdoors than do most U.S. hens. Nellie's does not violate the law by illustrating the undisputed fact that its hens have greater access to the outdoors with a whimsical proclamation to that effect. This statement is just a way of describing what hens do in grass, and "plenty of green grass" is not specific or precise enough to be proven true or false. *See Magruder v. Halliburton Co.*, 359 F. Supp. 3d 452, 461 (N.D. Tex. 2018) ("Statements that Halliburton had 'plenty of' or 'considerable' liquidity are too general and vague to cause a reasonable investor to rely on them.").

The same goes for the words "Outdoor Forage": if the Court does not agree that this is simply a true statement that Nellie's hens have some access to the outdoors, *see supra*, the term is at a minimum puffery, an illustration of the difference between the lives of Nellie's hens and the lives of the 90 percent of U.S. hens that are kept in tiny cages. It is hard to imagine how the two words "Outdoor Forage" could be proven false, given the absence of any suggestion in the FAC that Nellie's hens have no access to outdoor areas where they may engage in foraging behavior. If Plaintiff understood the words "Outdoor Forage" to mean that Nellie's hens have a specific, measurable amount of access to the outdoors that may fall short of the actual reality, that is more interpretive weight than those two words can plausibly bear.

A similar claim about food-producing animals was found to be nonactionable puffery in *Myers-Taylor v. Ornau Foods North America, Inc.*, 18-CIV-1538, 2019 WL 424703

17709520.1

(S.D. Cal. Feb. 4, 2019). The defendant in *Myers-Taylor* marketed butter as having been made with "Milk From Grass-Fed Cows." *Id*. at *1. In granting the defendant's motion to dismiss, the court first held that the statement "Milk From Grass-Fed Cows" would not have led a reasonable consumer to believe that the cows in question were *100%* grass-fed. *See id*. at *4; *see also Wynn v. Topco Assocs., LLC*, No. 19-CV-11104 (RA), 2021 WL 168541, at *3 (S.D.N.Y. Jan. 19, 2021) ("[T]he Court finds that Plaintiffs have failed to plausibly allege that a reasonable customer would in fact conclude that the word 'vanilla' on a product's front label implies that the product's flavoring was derived *exclusively* from natural vanilla extract . . . .") (emphasis in original).  Likewise, the statement here would not have led a reasonable consumer to believe that *all* of Nellie's hens peck, perch, and play on plenty of green grass *at all times*.

This court addressed similar puffery issues in *In re Scotts EZ Seed Litig.*, No. 12-CIV-4727, 2013 WL 2303727 (S.D.N.Y. May 22, 2013). The court held that several representations about the product Scotts Turf Builder EZ Seed were nonactionable puffery, including claims that "EZ Seed is 'WaterSmart'; 'Drought tolerant'; 'Grows Anywhere! Guaranteed!'; 'Makes the Most Of Every Drop'; and 'Grows in Tough Conditions! Guaranteed!'" *Id*. at *7. On the other hand, the court found that other statements, such as "EZ Seed grows grass '50% thicker with half the water' compared to 'ordinary seed,'" and  "EZ Seed is 'developed to thrive in virtually every condition — harsh sun, dense shade, and even spreads to repair wear and tear,'" were actionable.  *Id*. The court explained:

> These statements promise that EZ Seed will perform in specific, measurable ways; namely, that it grows thicker grass with less water than normal grass seed, and is versatile enough to grow in both sunny and shady areas.

*Id.*

The statement at issue here—that "Most hens don't have it as good as Nellie's" because "Our hens can peck, perch, and play on plenty of green grass"—is much closer to the "generalized or vague" statements that *In re Scotts* concluded were puffery than to the more "specific, measurable" claims that the court found to be actionable. *Id.*; *see also Frota v. Prudential-Bache Sec., Inc.*, 639 F. Supp. 1186, 1190 (S.D.N.Y. 1986) (statement that broker was a "friend" and "confidant" who plaintiffs "could trust" was "nothing more than the common puff of a salesman, and not actionable . . . .") (quotation marks omitted); *PETA v. Whole Foods Market California, Inc.*, No. 15-CV-4301, 2006 WL 1642577, at *3 (N.D. Cal. Apr. 26, 2016) (statements "Raised Right Tastes Right" and "Great-Tasting Meat From Healthy Animals" were "unspecific and unmeasurable, and therefore constitute puffery").

As for "Free-Range," if the Court is not prepared to rule that Defendant made a true statement regarding the Certified Humane Free-Range status of Nellie's eggs, it should rule that "Free-Range" is puffery, a statement that is too vague to constitute an actionable misrepresentation. The Complaint cites "[a] 2016 consumer survey conducted at the University of Bath" that "found that the top reason consumers purchase eggs labelled as 'free range' is because 'Hens are happier.'" Compl. ¶ 14. But *Lugones* correctly rejected claims of this nature about hen happiness as "paradigmatic examples of puffery," explaining that "[s]uch statements 'do not provide any concrete representations,' but are

16

instead 'subjective claims about products, which cannot be proven either true or false.'"

440 F. Supp. 3d at 241 (quoting *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 159

(2d Cir. 2007)) (citations omitted).

Plaintiff herself acknowledges that "free range" has no fixed or agreed-upon

meaning.[4] *See* FAC¶ 24 ("The USDA has published *multiple definitions* of the term 'free

range' despite the fact that *neither the USDA nor the FDA regulate the term* 'free range.'")

(emphasis added). To the extent that Plaintiff understood the words "Free-Range" to be

making a claim about hen happiness—that "Defendant's hens have better lives than other

hens"—the words are nonactionable for the reasons given in *Lugones*, as subjective claims

that cannot be proven true or false.[5]  *Id.*

**B.  The FAC lacks the necessary particularity to plead a fraud claim.**

As has been demonstrated above, Plaintiff has not identified any statements that

are false or deceptive.  But even if it is assumed *arguendo* that the statements and pictures

on the packaging are false, Plaintiff's perfunctory allegation regarding PGO's knowledge

falls far short of the necessary pleading standards for scienter.

---

[4] The citation to purported research and statements made by an Australian consumer advocacy group, CHOICE, *see* FAC ¶¶ 26-27, does not provide any additional support for what American or New York consumers might believe "free range" to mean.

[5] Although Count I and Count II note in passing that Plaintiff "seeks to enjoin the unlawful acts and practices described herein," *see* FAC ¶¶ 54, 62, Plaintiff has removed from the prayer for relief a request for injunctive relief that was included in the original Complaint. PGO assumes this means that Plaintiff is no longer seeking injunctive relief because it is well established in the Second Circuit that past purchasers lack standing to enjoin defendant's future sales practices. *Berni v. Barilla S.p.A.*, 964 F.3d 141, 149 (2d Cir. 2020) (finding that past purchasers lacked standing to seek an injunction because there was no likelihood of future harm and, as a result, could not be certified as a class under Fed. R. Civ. P. 23(b)(2)).

17709520.1

"Under New York law, fraud requires proof of (1) a material misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 170 (2d Cir. 2015). At the pleading stage, a plaintiff is required to meet the heightened standard of Fed. R. Civ. P. 9(b), which requires the pleading to "state with particularity the circumstances constituting the alleged fraud." With respect to the scienter element, a plaintiff must "allege facts 'that give rise to a strong inference of fraudulent intent'" to satisfy the requirements of Rule 9(b). *Loreley*, 797 F.3d 160, 170 (citation omitted). A plaintiff must plead either "facts to show that defendants had both motive and opportunity to commit fraud, or . . . facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 267 (2d Cir. 1996).

Plaintiff has not alleged motive or opportunity in specific or general terms. But even to the extent that the motive of higher prices might be inferred from the FAC, it would not suffice. "Generalized motives, such as the desire to earn profits, . . . are not sufficiently concrete for purposes of inferring scienter." *In re Welspun Litig.*, No. 16 CV 6792 (VB), 2019 WL 2174089, at *15 (S.D.N.Y. May 20, 2019).

Nor do the facts alleged constitute circumstantial evidence of conscious misbehavior or recklessness. In support of its scienter argument, Plaintiff claims that PGO "is undoubtedly aware of its farmers' practices." FAC ¶ 73. But the addition of the adverb "undoubtedly" to a bare assertion of knowledge does not provide specificity. Such bald claims that a defendant knew or should have known of falsity fail as a matter of law. *See*

*In re Welspun Litig.*, 2019 WL 2174089, at *16; *see also Hesse v. Godiva Chocolatier, Inc.*, 463 F.Supp.3d 453, 473 (S.D.N.Y. 2020) (finding "conclusory and legal allegations, devoid of particularized facts giving rise to an inference of scienter, are insufficient to meet Plaintiffs' burden under Rule 9(b)"); *Mason v. Reed's Inc.*, No. 18-CV-10826-JGK, 2021 WL 293326, at *7-8 (S.D.N.Y. Jan. 28, 2021) (dismissing fraud claim where plaintiff failed to provide sufficient allegations with particularity "establishing that the defendant had the requisite knowledge and acted with fraudulent intent").

Instead, a complaint must demonstrate "the inferential chain needed to yield fraudulent intent," connecting actual falsehood with facts supporting knowledge. *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 355 (S.D.N.Y. 2020). The absence of particularized allegations regarding PGO's *awareness* of the conditions at the farms from which it sourced eggs prevents Plaintiff from meeting the "significant burden on the plaintiff in stating a fraud claim based on recklessness." *Chill*, 101 F.3d at 270. Because the Complaint fails to plead sufficiently specific facts to demonstrate scienter, the fraud claim must fail as a matter of law.

### C. <u>Plaintiff fails to allege sufficient facts to support an express warranty claim.</u>

Plaintiff's express warranty claim fails at the pleading stage because the FAC does not allege the essential elements required to establish an actionable claim. None of the statements identified in the FAC were a material statement amounting to a warranty. Moreover, Plaintiff has failed to show that she timely provided notice to PGO of her warranty claim. As a result, Plaintiff's warranty claim fails as a matter of law.

17709520.1

**1. Plaintiff has not adequately alleged the existence of a material statement amounting to a warranty.**

Under New York law, a plaintiff must allege "(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach" in order to state a claim for breach of contract. *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014). As explained above, the statements in question on Nellie's egg cartons do not constitute a material statement of fact amounting to a warranty. Instead, the statements are either non-actionable puffery or were true. *See, e.g., Hubbard v. Gen. Motors Corp.,* No. 95-CIV-4362, 1996 WL 274018, at *7 (S.D.N.Y. May 22, 1996) (dismissing express warranty claim where the complained-of statements were "generalized and exaggerated claims, which a reasonable consumer could not rely upon as statements of fact"); *Tears v. Bos. Sci. Corp.*, 344 F. Supp. 3d 500, 513 (S.D.N.Y. 2018) ("[Plaintiff] fails to plausibly allege that these warranties were breached, i.e. that the product was not as described by [Defendant].").

Furthermore, "a successful breach of warranty claim requires that the product be defective." *Tears*, 344 F. Supp. 3d at 512; *Tardella v. RJR Nabisco, Inc.*, 178 A.D.2d 737 (N.Y. App. Div. 3d Dep't 1991) ("[I]t is a consumer's burden to show that . . . the defect complained of existed at the time the product left the manufacturer."). Plaintiff has alleged that "many of Defendant's hens are unable to ever access the hatches or the outdoor space," and that she understood the statements to mean that "Defendant's hens had space to move around both indoors and outdoors, that the hens in fact spent time

outdoors, and that Defendant's hens have better lives than other hens because they have more access to the outdoors." FAC ¶¶ 20, 34. But Plaintiff has failed to allege that the eggs that she purchased came from hens that were unable to move about or to spend time outdoors. Instead, Plaintiff admits that hens "can . . . get outside through small hatches," weather permitting, and access "the outdoor space Defendant advertises." FAC ¶¶ 19-20.  Because Plaintiff has not shown that the eggs that she purchased came from a hen that did not have access to the outdoors, she cannot show entitlement to relief.

## 2.  Plaintiff has not alleged sufficient facts to show timely or sufficient notice.

In order to bring a claim for breach of warranty under N.Y. U.C.C. § 2-607, a "buyer must within a reasonable time after [she] discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."  N.Y. U.C.C. § 2-607(3)(a).  "The sufficiency and timeliness of the notice is generally a question for the jury." *Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 260 (E.D.N.Y. 2014) (internal quotation marks and brackets omitted). But where "only one inference may be drawn as to the reasonableness of [notice], it becomes a question of law" that can be resolved on a motion to dismiss. *Bassaw v. United Indus. Corp.*, 482 F. Supp. 3d 80, 87 (S.D.N.Y. 2020) (quoting *Telit Wireless Sols., Inc. v. Axesstel, Inc.*, No. 15-CV-5278 (KBF), 2016 WL 1587246, at *6 (S.D.N.Y. Apr. 18, 2016)); *see also Petrosino v. Stearn's Prod., Inc.*, No. 16-CV-7735 (NSR), 2018 WL 1614349, at *8 (S.D.N.Y. Mar. 30, 2018) (granting a motion to dismiss for lack of timely notice); *Tyman v. Pfizer, Inc.*, No. 16-CV-06941 (LTS) (BCM), 2017 WL 6988936, at *22-23 (Dec. 27, 2017) (report and recommendation) (same), *adopted by* 2018 WL 481890 (S.D.N.Y. Jan. 18, 2018); *Tomasino*, 44 F. Supp. 3d at 260-62 (same).

21

Plaintiff's allegations make plain that she has failed to give timely notice from when she "should have discovered any breach." N.Y. U.C.C. § 2-607(3)(a). The FAC alleges that Plaintiff purchased eggs distributed by Defendant "throughout 2018 and 2019." FAC ¶ 34. As a member of this court noted recently in dismissing a similar breach of warranty claim: "the purposes of the notice requirement [are impeded when] service . . . occurs months or even years after the buyer is injured[, as s]uch a period of time prevents a seller from minimizing his damages." *Barton v. Pret A Manger (USA) Ltd.*, No. 1:20-CV-04815 GHW, 2021 WL 1664319, at *12 (S.D.N.Y. Apr. 27, 2021) (quoting 4 Anderson U.C.C. § 2-607:21 (3d ed.)). That rationale is especially applicable where, as here, a plaintiff seeks to act on behalf of a class of consumers for warranty claims on goods long ago consumed and forgotten.

Courts have not hesitated to dismiss suits as a matter of law for untimely notice after similar or even far shorter delays. *See, e.g.*, *Bassaw*, 482 F. Supp. 3d at 87 (dismissing warranty claim as untimely when brought "nearly three full years" after purchase); *Moxie Indus., Inc. v. Hayden,* 677 F. Supp. 187, 192 (S.D.N.Y. 1988) (holding notice regarding perishable inventory "was too late . . . occurring as it did more than nine months after delivery"); *In re Gotham Silver Co.*, 91 F. Supp. 520, 524 (S.D.N.Y. 1950) ("Notice following a lapse of over thirteen months after acceptance, and of over eighteen months from the time buyer ought to have known of the breach is not, in the absence of unusual circumstances, given within a 'reasonable time.'"). Indeed, in New York "four months is more than a reasonable time" for notice as a matter of law. *Am. Mfg. Co. v. U.S. Shipping Bd. Emergency Fleet Corp.*, 7 F.2d 565, 566 (2d Cir. 1925); *Gala Trading, Inc. v. Adrienne, Inc.*,

17709520.1

174 A.D.2d 478, 479 (N.Y. App. Div. 1st Dep't 1991). The two or three years that Plaintiff

waited to give notice of her claim was unreasonable as a matter of law.

Moreover, the evidence cited by Plaintiff makes clear that the facts she alleges

should have been discovered several years ago. The FAC cites a YouTube video from

October 2018 as evidence of the breach of warranty. FAC ¶ 29. In that video, shoppers

were shown another YouTube video from February 2018 and asked to react to it.[6]  Most

of the photographs in the Complaint are exact duplicates of photographs from a

complaint filed in March 2019.  *Compare* FAC ¶¶ 17, 19, *with* Class Action Complaint,

*Lugones v. Pete & Gerry's Organics, LLC*, No. 1:19-cv-02097, ECF No. 1, at 30–34 (Mar. 6,

2019). The materials in the FAC make clear that the information cited by Plaintiff has been

publicly known and circulated for two or three years prior to her February 2021 notice

letter. This makes her delayed notice, years after her purchases, unreasonable.

**D.  Discovery should be stayed pending resolution of the motion to dismiss.**

Given the implausibility of the claims set forth in the Complaint, a stay of

discovery pursuant to Fed. R. Civ. P.  26(c) is appropriate. "Good cause" exists to stay

discovery pending adjudication of the motion to dismiss because the requested relief in

the motion could result in the dismissal of all counts, obviating the need for costly and

time-consuming discovery. *See generally, Avnet, Inc. v. American Motorists Ins. Co.*, 115

F.R.D. 588, 592 (S.D.N.Y. 1987).

---

[6] *Shoppers React to Nellie's "Free Range" Eggs*, YouTube (Oct. 30, 2018), https://www.youtube.com/watch?v=x9GksLy2R3A.  The video shown to the shoppers is *Chickens Crammed Inside Shed on 'Free-Range' Farm*, YouTube (Feb. 27, 2018), https://www.youtube.com/watch?v=HXlfn4uIDm8&t=131s.

## CONCLUSION

As set forth in detail above, all of Plaintiff's claims—under any of the legal theories she posits—are implausible because they rely upon statements that are either demonstrably true or non-actionable puffery.  As a result, the Complaint should be dismissed in its entirety with prejudice.

Dated: New York, New York
        June 29, 2021

Respectfully submitted,

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

/s/ Peter T. Shapiro
Peter T. Shapiro, Esq.
77 Water Street, Suite 2100
New York, NY 10005
212-232-1322
Peter.shapiro@lewisbrisbois.com

Nathan R. Fennessy, Esq. (admitted *pro hac vice*)
Preti Flaherty Beliveau & Pachios LLP
P.O. Box 1318
Concord, NH 03302-1318
nfennessy@preti.com
603-410-1500

*Attorneys for Defendant*

24

<u>**CERTIFICATE OF SERVICE**</u>

      Peter T. Shapiro, an attorney duly admitted to practice before this Court, certifies that on June 29, 2021, he caused the within Memorandum of Law in Support of Motion to Dismiss to be filed and served via the Court's electronic filing system.

/s/ Peter T. Shapiro         
Peter T. Shapiro

17709520.1