UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
CONSTANCE MOGULL, individually and on :
behalf of all others similarly situated, :
                Plaintiff, : **OPINION AND ORDER**
v. :
   : 21 CV 3521 (VB)
PETE AND GERRY'S ORGANICS, LLC, :
                Defendant. :
--------------------------------------------------------------x

Briccetti, J.:

Plaintiff Constance Mogull brings this putative class action against defendant Pete and Gerry's Organics, LLC ("Nellie's" or "defendant"), claiming that eggs marketed by Nellie's as "free-range" are actually not "free-range."

Now pending is defendant's motion to dismiss the first amended complaint ("FAC") pursuant to Rule 12(b)(6). (Doc. #19).

For the following reasons, the motion is DENIED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d).

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the FAC and draws all reasonable inferences in plaintiff's favor, as summarized below.

Plaintiff alleges Nellie's is one of the nation's largest sellers of eggs, including eggs it markets as "free-range."

Defendant's packaging describes its eggs as "free-range," includes images of hens outdoors, and states:

> Most hens don't have it as good as Nellie's. 9 out of 10 hens in the U.S. are kept
> in tiny cages at giant egg factories housing millions of birds. Sadly, even "cage-

1

> free" is now being used to describe hens that are crowded into large, stacked cages on factory farms, who never see the sun. Nellie's small family farms are all Certified Humane Free-Range. Our hens can peck, perch, and play on plenty of green grass.

(FAC ¶ 3). Defendant's packaging also states its eggs come from "Outdoor Forage" hens. (Id. ¶ 4).

According to plaintiff, Nellie's also advertises its eggs as "free-range" on its website. For example, its website features images of hens roaming outdoors alongside statements such as "[o]ur happy hens are free to roam and strut throughout their wide open pasture. They peck at bugs and flowers, cluck around in groups, and just live as free as a bird all day long." (FAC ¶¶ 10–11). Defendant's website states "[b]eing free-range means that during most times of the day and year, our hens are free to roam outside as they please," which is different than being "cage free, which typically does not involve any amount of outdoor access." (Id. ¶ 12).

Moreover, plaintiff alleges Nellie's advertised its "free-range" hens on YouTube. Plaintiff cites to one YouTube video that shows hens roaming in an open meadow, with narration explaining defendant's hens are not "cage free," but "free-range," and "free-range hens get to live their lives like real hens, with access to pasture everyday in good weather." (FAC ¶ 9).

Plaintiff alleges, however, Nellie's eggs are not actually "free-range." She alleges Nellie's hens are "crammed" into overcrowded sheds and have no or limited access to outdoor space. (FAC ¶¶ 6, 19–20). In support, she cites to photographs allegedly of defendants' henhouses, which are "virtually indistinguishable . . . from the example [Nellie's] show[s on its website] as being not 'Free Range' where hens are essentially 'liv[ing] inside a space much like an overcrowded warehouse." (Id. ¶ 18).

In addition, plaintiff alleges a reasonable consumer would understand "free-range" to mean hens are not confined and are able to move comfortably indoors and roam outdoors based

on a number of sources. For example, she cites to a YouTube video in which shoppers who purchased Nellie's eggs were shown a video of the purported conditions on Nellie's farms and responded that the video did not comport with their understanding of "free-range." (FAC ¶ 34).

Plaintiff further alleges she has purchased defendant's "free-range" eggs on multiple occasions. According to plaintiff, she was deceived by defendant's false marketing of Nellie's eggs, would not have purchased the eggs if she had known that defendant's representations regarding its hens and egg production were false, and paid more for Nellie's eggs than she would have for eggs that are not "free-range."

## DISCUSSION

I.   Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[1] First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

II.     New York General Business Law Claims

Defendant argues plaintiff fails to state a claim under New York General Business Law ("GBL") Sections 349 and 350 because the representations challenged by plaintiff are true when read in context and are thus not misleading, or in the alternative, are non-actionable puffery.

The Court disagrees.

A.      Legal Standard

Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce," and Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce." To state a claim under either section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015).

An alleged act is materially misleading if it is "likely to mislead a reasonable consumer acting reasonably under the circumstances." Orlander v. Staples, Inc., 802 F.3d at 300. Plaintiff must do more than "plausibly allege that a label might conceivably be misunderstood by some few consumers." Jessani v. Monini N. Am., Inc., 744 F. App'x 18, 19 (2d Cir. 2018) (summary order). Rather, the operative question is whether a "significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." Id.

4

"[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." Fink v. Time Warner Cable, 714 F.3d 739, 742 (2d Cir. 2013) (per curiam). "For example, under certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception." Id. In other words, courts assess "each allegedly misleading statement in light of its context on the product label or advertisement as a whole," contemplating "[t]he entire mosaic . . . rather than each tile separately." Belfiore v. Procter & Gamble Co., 311 F.R.D. 29, 53 (E.D.N.Y. 2015).

In certain cases, whether a product's packaging is materially misleading can be determined as a matter of law. Fink v. Time Warner Cable, 714 F.3d at 741. However, "[t]here is significant authority supporting the idea that it is inappropriate for a court to decide whether a reasonable consumer could be misled at the Rule 12(b)(6) stage." Lugones v. Pete and Gerry's Organic, LLC, 440 F. Supp. 3d 226, 242 (S.D.N.Y. 2020) (citing Kacocha v. Nestle Purina Petcare Co., 2016 WL 4367991, at *14 (S.D.N.Y. Aug. 12, 2016) (collecting cases)). Consequently, "[d]ismissal [at the motion to dismiss stage] is warranted only in a rare situation where it is impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." Hesse v. Godiva Chocolatier, Inc., 463 F. Supp. 3d 453, 467 (S.D.N.Y. 2020).

Nevertheless, "[s]tatements and practices that are mere puffery are not actionable," Fink v. Time Warner Cable, 810 F. Supp. 2d 633, 644 (S.D.N.Y. 2011), including under consumer protection statutes. See Kacocha v. Nestle Purina Petcare Co., 2016 WL 4367991, at *16. "Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language," id.—in other words, a "[s]ubjective claim[]" about a product that "cannot be proven either true or false." Lipton v. Nature Co., 71 F.3d 464, 474 (2d Cir. 1995) (analyzing unfair competition claim brought under federal law). Accordingly, plaintiff cannot plausibly allege a

5

statement is materially misleading if "a reasonable consumer would not interpret [it] as a factual claim upon which [s]he could rely." Fishon v. Peloton Interactive, Inc., 2020 WL 6564755, at *6 (S.D.N.Y. Nov. 9, 2020).

B.  Analysis

Plaintiff has adequately alleged defendant made materially misleading statements that are not puffery.

Plaintiff alleges defendant's packaging represents its eggs are "free-range," notwithstanding that its hens are "crammed" into henhouses 20,000 at a time, many of which are unable to ever access outside space. Plaintiff alleges these conditions are contrary to her and other Nellie's purchasers' understanding of "free-range," and that USDA and FDA definitions of "free-range" are more akin to plaintiff's views. See Barton v. Pret A Manger (USA) Ltd., 535 F. Supp. 3d 225, 238 (S.D.N.Y. 2021). These representations were made in consumer facing packaging and on defendant's website, and plaintiff alleges she relied on these representations in purchasing—and paying a premium for—defendant's eggs. This is all that is required for plaintiff's claims to survive a motion to dismiss. See Koenig v. Boulder Brands, Inc., 995 F. Supp. 2d 274, 288 (S.D.N.Y. 2014).

Nellie's argues the challenged statements are true because its farming practices meet the "Certified Humane Free-Range" qualifications. However, "free-range" is displayed as a standalone phrase throughout defendant's packaging, and only appears once directly adjacent to "Certified Humane." Defendant's website is "nelliesfreerange.com," and the phrase "free-range" is stated throughout separately from the "Certified Humane" designation. Accordingly, it is plausible a reasonable consumer would not understand "free-range eggs" to convey that Nellie's eggs meet the "Certified Humane" standard. Therefore, "[t]his is not one of the rare instances in

which the Court may dismiss a consumer-protection claim on this posture." Hesse v. Godiva Chocolatier, Inc., 463 F. Supp. 3d at 467; see also Singleton v. Fifth Generation, Inc., 2016 WL 406295, at *9 (N.D.N.Y. Jan. 12, 2016); Colpitts v. Blue Diamond Growers, 527 F. Supp. 3d 562, 581 (S.D.N.Y. 2021).

Plaintiff also plausibly alleges the term "free-range" is not mere puffery. According to plaintiff, "free-range" is an affirmative claim about a product's qualities—i.e., that the eggs were produced by hens with extended access to indoor and outdoor space—and is, therefore, not "an exaggeration or overstatement expressed in broad, vague, and commendatory language."

Because a reasonable consumer could interpret the disputed product descriptions as factual claims on which he or she could rely, the Court denies defendant's request for dismissal on the ground that defendant's alleged misrepresentations are non-actionable puffery. Lugones v. Pete and Gerry's Organic, LLC, 440 F.Supp.3d at 241–42.

Accordingly, the Court declines to dismiss plaintiff's claims under GBL Sections 349 and 350.

III.   Fraud Claim

Nellie's argues plaintiff fails to plead a fraud claim because the challenged statements are true, and even if they are not, plaintiff fails to plead scienter.

The Court disagrees.

A claim for fraud under New York law requires a showing of "a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 421 (1996).

In addition, Rule 9(b) provides "a party must state with particularity the circumstances constituting fraud." Thus, the complaint must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006).

"At the pleadings stage, the alleged fraud need only be plausible based on the complaint; it need not be more likely than other possibilities." Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d. 160, 174 (2d Cir. 2015). "[T]hough mental states may be pleaded generally, [a plaintiff] must nonetheless allege facts that give rise to a strong inference of fraudulent intent." Id. at 171. "An inference is strong if it is cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Id. at 176–77. Such an inference "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Lerner v. Fleet Bank, N.A., 459 F.3d at 290–91.

First, as discussed above, plaintiff plausibly alleges Nellie's falsely described its eggs as "free-range." Second, plaintiff alleges Nellie's is a top distributor of eggs in the United States that is aware of its farmers' practices, is aware of how the term "free-range" is perceived by consumers, and goes to great lengths in its packaging and website to advertise the eggs as "free-range" eggs produced by hens roaming freely in ample space outdoors. Third, plaintiff alleges she paid more for Nellie's eggs than she would have for "cage-free" or standard grade A eggs because she believed they were free-range. Although this is a close call, the Court cannot conclude at this early stage, when all reasonable inferences must be drawn in plaintiffs' favor,

that the FAC fails to allege facts giving rise to a strong inference of fraudulent intent. Lugones v. Pete & Gerry's Organic, LLC, 440 F. Supp. 3d at 243; see also Izquierdo v. Panera Bread Co., 450 F. Supp. 3d 453, 466 (S.D.N.Y. 2020).

Accordingly, the Court declines to dismiss plaintiff's fraud claim.

IV. Breach of Express Warranty Claim

Defendant argues plaintiff's breach of express warranty claim must be dismissed because plaintiff fails to allege the existence of a material statement amounting to a warranty, or that she provided defendant timely pre-suit notice as required by the New York Uniform Commercial Code ("UCC").

The Court disagrees.

A. Material Statement

Under New York law, an express warranty is an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." N.Y. U.C.C. § 2-313(1)(a). A product label or advertisement can create an express warranty See, e.g., Singleton v. Fifth Generation, Inc., 2016 WL 406295, at *11 (plaintiff plausibly alleged packaging representations that vodka was "handmade" and "crafted in an old-fashioned pot still" was an express warranty breached by highly automated production process); Grossman v. Simply Nourish Pet Food Co., 516 F. Supp. 3d 261, 283 (E.D.N.Y. 2021). Here, based on plaintiff's allegations, Nellie's represented the eggs came from "free-range" hens, its egg production methods are not in fact "free-range," and plaintiff relied on this claim in deciding to purchase Nellie's eggs at premium prices. These allegations are sufficient to plead a breach of express warranty.

Nellie's argues plaintiff has not alleged breach of an express warranty because she has not shown the eggs she purchased came from a hen that did not have access to the outdoors. However, plaintiff has alleged many of defendant's hens are not able to access the outdoors. Just as "the Court is unable to determine as a matter of law that the statements are not misleading under GBL § 349 [and 350], it is equally inappropriate to determine they are not misleading for the warranty claim." Goldemberg v. Johnson & Johnson Consumer Cos., 8 F. Supp. 3d 467, 483 (S.D.N.Y. 2014); see also Cooper v. Anheuser-Busch, LLC, 2021 WL 3501203, at *11 (S.D.N.Y. 2021); Atik v. Welch Foods, Inc., 2016 WL 5678474, at *13 (E.D.N.Y. Sept. 30, 2016).

B.   Pre-Suit Notice

Under the UCC, a "buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." N.Y. U.C.C. § 2-607(3)(a). This "rule of requiring notification is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy." Id. cmt. 4. Thus, "[t]he content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched," and it need not claim damages, threaten litigation, or "include a clear statement of all the objections that will be relied on by the buyer." Id. As defendant acknowledges in its brief, "the sufficiency and timeliness of the notice is generally a question for the jury." Tomasino v. Estee Lauder Cos., 44 F. Supp. 3d 251, 260 (E.D.N.Y. 2014); Patellos v. Hello Prods., LLC, 523 F. Supp. 3d 523, 533 (S.D.N.Y. 2021).

Here, plaintiff alleges she notified Nellie's of her claims in a demand letter sent February 19, 2021, "less than a month" after she "discovered Defendant's breach and learned the nature of Defendant's practices." (FAC ¶¶ 68–69). In view of this allegation, assumed true for purposes

10

of the instant motion, the Court denies defendant's motion to dismiss for failure to provide pre-suit notice of plaintiff's breach of express warranty claim.  Nellie's nevertheless argues that plaintiff's notice was untimely, because the demand letter was sent up to three years after plaintiff allegedly purchased the eggs in 2018 and 2019.  However, plaintiff alleges she first became aware of defendant's husbandry practices within a month of sending her demand letter, and the UCC notice requirement arises from the time the buyer discovered or should have discovered the breach.  See, e.g., Patellos v. Hello Products, LLC, 523 F. Supp. 3d at 533 (seven months following purchase sufficient for pre-suit notice at the 12(b)(6) stage when the defect complained of did not become apparent immediately); cf. Bassaw v. United Indus. Corp., 482 F. Supp. 3d 80, 87 (S.D.N.Y. 2020) (notice three years after purchase untimely as a matter of law when the complaint "is silent with respect to when [plaintiff] discovered or should have discovered the alleged breach, which is the relevant trigger under New York law").

Accordingly, plaintiff plausibly alleged she provided timely pre-suit notice, and the Court declines to dismiss plaintiff's breach of express warranty claim.

## CONCLUSION

The motion to dismiss is DENIED.

By March 14, 2022, defendant shall file an answer.

By separate Order, the Court will schedule an initial conference.

The Clerk is instructed to terminate the motion.  (Doc. #19).

Dated: February 28, 2022
      White Plains, NY                SO ORDERED:

                                                        Vincent L. Briccetti
                                                        United States District Judge